No. 20,123.

VERNON JOHNSON *v.* THE PEOPLE OF THE STATE OF COLORADO.
(384 P. [2d] 454)

Decided July 29, 1963. Rehearing denied September 3, 1963.

Messrs. MELLMAN, MELLMAN & THORN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. GEORGE W. NICASTRO, Special Assistant, for defendant in error.

*En Banc.*

Mr. JUSTICE McWILLIAMS delivered the opinion of the Court.

BY direct information Vernon Lincoln Johnson, here-

inafter referred to either as Johnson or as the defendant, was charged with the unlawful and premeditated murder of Raymond McMaster on November 9, 1958, and in a second count with so-called aggravated robbery from one Nick Lenarz, also on November 9, 1958. Upon trial a jury returned a verdict acquitting Johnson of the murder charge, but convicting him of aggravated robbery. On review this robbery conviction was reversed on the ground that the jury was not properly instructed, and the cause was remanded for a new trial on the robbery count. See *Johnson v. People,* 145 Colo. 314, 358 P. (2d) 873.

Upon retrial Johnson was again convicted of aggravated robbery and sentenced to a term of from ten to twenty years in the state penitentiary. By the present writ of error Johnson seeks reversal of this judgment and sentence.

The evidence adduced upon retrial was substantially the same as that presented at the prior trial. The facts and circumstances having already been fully set forth in *Johnson v. People,* supra, no good purpose would be served by a detailed repetition thereof, and accordingly reference thereto will only be made as may be necessary to an understanding of the various assignments of error.

Before the retrial Johnson asked the trial court to quash the robbery count on the ground that his acquittal on the murder count barred prosecution of the robbery charge under the doctrine of autrefois acquit. This the trial court declined to do, and error is assigned to this ruling.

■ In *Curtis v. United States,* 67 Fed. (2d) 943 it was stated that the plea of autrefois acquit is unavailing unless the charge to which it is interposed is precisely the same in law and in fact as the former one relied on under the plea, and that the test as to the identity of the offenses is whether the same evidence is required to sustain each.

In *Davidson v. People,* 64 Colo. 281, 170 P. 962, it was stated:

"To be sufficient in law the plea of autrefois acquit must be based upon the fact that the matter set out in the second indictment or information is such as would be admissible and *sustain a conviction,* under the first . . .

"A test almost universally applied to determine the identity of the offenses is to ascertain the identity, in character and effect, of the evidence in both cases. If the evidence which is necessary to support the second indictment was admissible under the former, related to the same crime, *and was sufficient if believed by the jury to have warranted a conviction of that crime,* the offenses are identical, and a plea of former conviction or acquittal is a bar." (Emphasis supplied.)

*Seiwald v. People,* 66 Colo. 332, 182 P. 20, presents a factual situation analogous to the present one. There, Seiwald was charged with the murder of a policeman, the homicide occurring during the course of an attempted robbery of a saloon wherein not only the policeman was killed, but also the proprietor of the establishment, one Lloyd. Upon trial for the murder of the policeman Seiwald was convicted of murder in the second degree. Apparently being dissatisfied with the outcome of that trial, the district attorney later charged Seiwald with the murder of Lloyd. To this later charge Seiwald interposed a plea of former jeopardy, his reasoning being that by only convicting him of second degree murder in connection with the death of the policeman the jury had in effect determined that there was in fact no attempted robbery, i.e. if the killing of the policeman had been perpetrated during an attempted robbery, he would under applicable statute have been necessarily guilty of murder in the first degree. See C.R.S. '53, 40-2-3. In rejecting this argument it was said:

"As to the second ground, the contention of counsel for defendant is that, inasmuch as the verdict of the jury, finding the defendant guilty of murder in the second de-

gree only, must have been based on a finding that the killing was not done in an attempted robbery, the question of robbery could not be again tried; and that it was conclusively established that there was no robbery, nor attempt at robbery, when the two persons were killed, it being one transaction.

"We do not agree with these conclusions. Though the homicides were closely related in time, two distinct offenses were committed."

■ Applying the foregoing principles to the instant case it is at once evident that the unlawful killing of McMaster and the robbery of Lenarz are not "precisely the same in law and in fact," but are separate and distinct crimes, even though a part of one continuing criminal transaction. Accordingly, the fact that Johnson was acquitted on the charge of murdering McMaster does not bar his prosecution on the charge of robbing Lenarz.

Upon retrial one Revelo Sides was called by the People as its witness. After being sworn, Sides gave his name and stated that he was a ward of the state penitentiary, but then flatly refused to testify further. Sides was as of that time serving a life sentence in the state penitentiary, and accordingly the trial court was handicapped as to possible punishment which it could impose under its contempt powers for his refusal to testify.

Faced with this turn of events, the district attorney sought to introduce the testimony which Revelo Sides had given as a People's witness in the prior trial. To accomplish this he called the official court reporter, who by the use of his stenographic notes could, and eventually did, testify as to the various questions put to Sides and Sides' verbatim responses thereto. At the prior trial Sides was under oath, and was subjected to cross-examination by counsel for Johnson. Over objection the trial court permitted the district attorney to proceed in the manner just outlined, and error is now predicated thereon.

■ The general rule at the common law was that where a witness who had testified at a prior trial was

unavailable at the time of the second trial, his testimony at the former trial once properly authenticated was admissible in the latter trial. Johnson concedes this to be the rule, but contends that Sides was not "unavailable," but on the contrary not only "available" but actually present in court.

A somewhat parallel situation is presented in *State v. Stewart*, 85 Kans. 404, 116 P. 489, where a witness for the State in a prosecution for murder was physically present at the trial but refused to testify. In permitting the introduction of the testimony given by that witness in a preliminary examination into the charge on which the accused was then on trial, the Kansas Supreme Court said that the true test was not so much the "unavailability" of the witness, but the "unavailability" of his testimony and that a witness who—though present—refused to testify is just as surely "unavailable" as the witness who stepped across a state line to avoid service of a subpoena. We approve of this rationale and hold that under the circumstances there was no error in using the former testimony of Revelo Sides. In support of this conclusion see, also, *People v. Pickett*, 339 Mich. 294, 63 N.W. (2d) 681; 20 Am. Jr. pp. 578-594; 15 A.L.R. 495, and 45 A.L.R. (2d) 1354.

Johnson's basic assignment of error is that the evidence does not support the jury's verdict that he was guilty of aggravated robbery. Our review of the record persuades us that the evidence is legally sufficient to support the verdict. To give meaning to this conclusion, we note that the evidence established the following:

1. Revelo and Vernon Sides and the defendant, all of whom apparently resided in Denver, "met" in Boulder during the late evening of November 8, 1958, Johnson driving a Hudson car bearing California license plates and the two Sides having their own vehicle;

2. These two vehicles were driven to a secluded spot, where the Sides vehicle was parked and all then drove off in the defendant's car, one of the Sides transferring

to Johnson's car a bag in which there were burglary tools, coveralls, stocking masks, baseball caps and two .38 revolvers and one Luger.

3. These three then drove in defendant's car north from Boulder to Lyons where they "cased" several establishments with an eye to committing burglary, and defendant at about 1:30 A.M. on November 9, 1958, dropped the Sides brothers at the edge of Lyons, the Sides taking their "equipment" with them;

4. At about 2 A.M. on November 9, 1958, the Sides brothers "held up" a restaurant and tavern known as the Hideout, in Lyons, and at gun point took certain moneys from the bartender, Lenarz, who immediately thereafter telephoned a report of the robbery to the "law in Longmont";

5. Shortly before 3 A.M. on November 9, 1958, defendant "met" the two Sides, who were then afoot in an open field adjacent to a back road near Lyons, and the Sides got into defendant's car and the three began to return to Boulder, with the Sides changing their clothing in the back seat;

6. A few miles down the road the Johnson vehicle ran into a roadblock thrown up by law enforcement officers, and those manning the roadblock testified that they saw only one person in the vehicle, namely the driver who later turned out to be Johnson, the Sides at the time lying down on the floor of the back seat;

7. Upon command Johnson came out of the car with his hands in the air, and moments later the Sides got out of the car on the opposite side and one of them shot and killed McMaster;

8. That in the ensuing melee a voice behind officer Groghjon said "drop your gun—I've got you covered," whereupon Groghjon wheeled, saw Johnson and began shooting at him, wounding him in the shoulder;

9. That the Sides and Johnson successfully escaped the area and when Johnson was apprehended several days later and interrogated by the police he was generally un-

communicative, though he reportedly did state that he couldn't understand why he was in on the "job," since he didn't need the money.

It was the People's theory of the case that the two Sides and Johnson conspired to commit a criminal act and that Johnson's role was to take the Sides to the scene of their crime and then to rendezvous with them at an appointed place and thereafter drive the getaway car.

Although Johnson did not elect to avail himself of his statutory right to testify in his own behalf, nor did he call any witnesses in his behalf, it apparently was his theory of the case that though he initially conspired to commit a burglary in Lyons, he thereafter withdrew from the conspiracy, abandoned his erstwhile conspirators and knew nothing about the holdup of the Hideout, and later stumbled onto the Sides purely by chance.

 Johnson's position in this regard would have been much more plausible if—after abandoning the conspiracy as he claims he did—he had left the scene. But this he did not do. On the contrary he remained in the immediate area for well over an hour and then again "met" his two companions. Under such circumstances he can not now complain if the jury refused to be impressed by his theory of the case that though originally a conspirator, he later withdrew completely from these evil machinations. In short, the facts and more particularly the inferences to be drawn therefrom merely posed a controverted issue to be resolved by the trier of the facts, and we hold there is evidence which supports its finding.

Johnson also contends that the jury was not properly instructed and that the conviction should be set aside for that reason. Over objection the jury was given an instruction on circumstantial evidence; another defining a conspiracy and advising the jury that once a conspiracy is established the acts of each are binding on all; and one setting forth the statutory definition of an accessory. Johnson makes no complaint as to the content of these

instructions, but contends that the evidence did not warrant the giving thereof. For the reasons set forth above, we conclude that the evidence justified the giving of each of these several instructions.

Johnson also complains that a tendered instruction on his theory of the case was refused. It is true that his particular instruction in this regard was not given, but another instruction using virtually the same language was given by the court and hence we perceive no error.

Johnson finally suggests error on an alleged irregularity wherein during the course of the trial the judge postponed the trial for thirty three days and allowed the jurors to go their separate ways for this period of time. Johnson made no objection to the fact that the jurors had been allowed to separate at the end of each day's session of court, but he did object to the postponement of the trial proper.

The ultimate reason for this postponement was the fact that though the trial was held in the Eighth Judicial District, it was presided over by the district judge from the Ninth District. Trial was set for a Tuesday, with the expectation of all concerned that it would be concluded by the following Friday. Too much time was spent in disposing of preliminary matters which should have been ruled on long prior to the time that actual trial was scheduled to commence. In the period of time from Tuesday through Friday a jury was empaneled and the People had called only two witnesses: (1) witness Lenarz who testified that he had been held up by two persons, and that neither of the robbers was the defendant Johnson, and (2) witness Sides, who gave his name and address and then refused to testify. The trial judge had theretofore set important matters for hearing in his own district for the following Monday, hence he felt compelled to postpone the pending proceeding against Johnson. The trial court suggested an earlier date for the resumption of the trial, but this proposed date was not

satisfactory to counsel for Johnson, and accordingly the trial was delayed thirty three days.

Postponement of a trial, once it has commenced, is generally held to be a matter within the sound discretion of the trial court, and the granting of a postponement will not constitute reversible error unless it be shown that such was a clear abuse of discretion or that actual prejudice resulted from the delay. Here no prejudice is shown, and there is no suggestion of any misconduct on the part of the jury during this interval, the jurors having been carefully admonished as to their conduct prior to the separation.

In short, Johnson contends that the postponement was error, *per se*. With this we do not agree. Though postponement of the trial for this period of time is a highly undesirable mode of trial procedure, nevertheless under the circumstances shown here such does not constitute prejudicial error. In fairness to the trial judge, he too was displeased with the need for a postponement, and reluctantly did so only because he considered such to be an absolute necessity. See *Ossenkop v. State,* 86 Neb. 539, 126 N.W. 72 and 34 A.L.R. 1203.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE not participating.