[Crim. No. 18552. In Bank. Nov. 20, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ABEL MAGLENO ROJAS et al., Defendants and Appellants.

## COUNSEL

F. Thomas Huster, under appointment by the Supreme Court, William F. Bryan, Robert H. Ames, Elizabeth A. Helfrich and Pioda, Bryan & Ames for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and J. Patrick Collins, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**—Abel Magleno Rojas and Arthur Nester Ramirez appeal from judgments upon jury convictions of assault with a deadly weapon in two counts as to each defendant (Pen. Code, § 245) and, as to Ramirez only, of use of a firearm in the commission of the assaults (Pen. Code, § 12022.5).[1] Rojas alone contends that the court erred in denying his motion to enter a plea of once in jeopardy due to discharge of the jury upon its failure to reach a verdict in a prior trial. Both defendants urge prejudicial error when, because the prosecution's chief witness who had been granted immunity refused to testify, the court admitted transcripts of the witness' testimony received at the preliminary hearing and at the prior trial. We have concluded that defendants' contentions are without merit and we affirm the judgments.

---

[1] Ramirez also purports to appeal from the sentence. "The judgment *is* the sentence and appealing from both is tautological." (*People* v. *Sweeney* (1960) 55 Cal.2d 27, 33, fn. 1 [9 Cal.Rptr. 793, 357 P.2d 1049], italics added; see also *People* v. *Flores* (1974) 12 Cal.3d 85, 93, fn. 6 [115 Cal.Rptr. 225, 524 P.2d 353].)

The assaults occurred late one night after a party at a county fairgrounds attended by young adults. Earlier in the evening one of the victims had participated briefly in a fight with a number of individuals including defendants. Another person who had been involved in the fight on the side of defendants had received a serious knife wound. Later when the victim of the assault involved in the matter now before the court left the party and was approaching his car he heard a gunshot and saw a person in front of him fall to the ground. As he attempted to assist the wounded man he also was hit by a shot fired from a nearby automobile. The vehicle from which the shots were fired sped away and a witness who followed in another car observed three or four persons abandon the pursued vehicle after it went off the road. An officer, responding to a call from the scene of the shootings, stopped at the abandoned car where he found Robert Navarrette, age 16, nearby.

Navarrette's testimony at the preliminary hearing and the prior trial when considered together was to the effect that he had been offered immunity from prosecution; that in response to a request from defendant Rojas, whose car was then inoperable, he had driven defendants and a companion to the fairgrounds on the night of the shootings; that Rojas had stated that he wished to be taken to that location as one of his friends had received a stab wound earlier in the evening; that at the fairgrounds Rojas had suggested Navarrette seat himself in the rear of the car and Rojas took the driver's seat; that he, Navarrette, had consumed seven or eight tall cans of beer and some wine earlier in the evening and was feeling "high"; that while sitting in the back seat of his car he heard a gunshot and saw Ramirez in the front seat of the car with a gun in his hand; that he saw a man lying on the ground outside the car; that he saw Ramirez aim and fire a second shot out the side window of the car; that Rojas then drove away; that the car later went off the road and all his companions ran off.

After having made a thorough examination of the issues and the contentions of the parties we have concluded that the opinion of the Court of Appeal, First Appellate District, Division One, prepared by Presiding Justice Molinari and concurred in. by Justice Elkington correctly treats and disposes of the issues involved and we adopt that opinion as and for the opinion of this court. Such opinion with appropriate deletions and additions is as follows:[2] []

[2]Brackets together, in this manner [] *without enclosing material*, are used to indicate deletions from the opinion of the Court of Appeal; brackets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote

## *The Plea of Once in Jeopardy*

Following the declaration of a mistrial on the ground that the jury was unable to agree upon a verdict a hearing was held on defendant Rojas' motion that he be permitted to enter a plea of once in jeopardy and for a dismissal of the charges against him. At the beginning of the hearing it was stipulated that following the statement by the foreman at the previous trial that the jurors were unable to agree, the individual jurors were not polled and that no specific statement or inquiry was made with respect to the individual defendants. Rojas presented the affidavits of six of the jurors to the effect that during the jury's deliberations the matter of Rojas' guilt or innocence was not discussed and they had not taken a vote as to the guilt or innocence prior to their dismissal. No counter-affidavits were presented. It was established that the jury had taken a vote on the guilt or innocence of defendant Ramirez and that it stood nine to three.

█ Under article I, section 13, of the California Constitution and Penal Code section 1023, the discharge of a duly impaneled and sworn jury without a verdict bars a retrial unless the defendant consented to the discharge or legal necessity required it under Penal Code section 1140. (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 712-713 [87 Cal.Rptr. 361, 470 P.2d 345].) Penal Code section 1140 provides: "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

█ In the present case no claim is made by the People that Rojas in any way consented to the discharge of the jury. Accordingly, jeopardy would attach unless there was legal necessity for the discharge. █ Such a legal necessity exists if, at the conclusion of such time as the court deems proper, it satisfactorily appears to the court that there is no reasonable probability that the jury can resolve its differences and render

---

insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. In so doing, we adhere to a method of adoption employed by us in the past. (See *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311, fn. 2 [70 Cal.Rptr. 849, 444 P.2d 481], and cases there cited.) Footnotes in the Court of Appeal opinion have been renumbered sequentially.

a verdict. Under these circumstances the court may properly discharge the jury and reset for trial. (*People* v. *Griffin* (1967) 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507]; *Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641].) The determination, in each instance, rests in the sound discretion of the trial judge, exercisable on reference to and consideration of all the factors before him. (*Paulson* v. *Superior Court, supra,* at p. 6; *People* v. *Carter* (1968) 68 Cal.2d 810, 815 [69 Cal.Rptr. 297, 442 P.2d 353]; *People* v. *Huff* (1967) 255 Cal.App.2d 443, 447 [63 Cal.Rptr. 317].)

▇▇▇ In the present case the discharging court asked the jury forelady, after about five and one-half hours of deliberations, whether a verdict had been reached, and if not, what the vote count was. She said no verdict had been reached and the count was nine to three. The court inquired of her whether she felt further deliberations would be of value, and she replied that she did not. The court then asked: "Does anybody on the jury think so?" The record indicates that various jury members shook their heads negatively. Under these circumstances it cannot be said that the court abused its discretion in discharging the jury as it properly determined that there was no reasonable probability that a verdict could be reached.

▇▇▇ We observe that the inquiry here made of the forelady individually and of the jury as a whole was an inquiry addressed individually to the jury panel of the probability or otherwise of reaching a verdict and, as such, was a proper inquiry. (*People* v. *Lovely* (1971) 16 Cal.App.3d 196, 202-203 [93 Cal.Rptr. 805].)[3] There is no merit, accordingly, to the contention that the court in the instant case was required to poll each juror individually in order to determine whether the jury was deadlocked.

▇▇▇ Adverting to the contention that there was no showing that the jury was deadlocked as to Rojas because his guilt or innocence was never discussed, [we find that] the record made at the special hearing on this issue contains sufficient evidence to support the determination that under the facts of this case the jury's inability to reach a verdict as to defendant Ramirez's guilt or innocence precluded a verdict as to Rojas' guilt or innocence. There was ample evidence to indicate that the evidence was so intertwined as to both defendants that a verdict regarding one of them would inculpate or exculpate the other as well and that the jury's deadlock as to Ramirez also meant a deadlock as to Rojas.

[3]In *People* v. *Caradine* (1965) 235 Cal.App.2d 45, 49-50 [44 Cal.Rptr. 875], it is suggested that such an inquiry is proper when it is addressed to the foreman or forelady alone.

Moreover, as observed by the trial court, common sense dictates that if the jury forelady and the jury believed a verdict was possible as to one defendant, but not the other, they would not have responded negatively when asked by the court if a verdict was possible. The fact that the jury did not vote on Rojas' guilt or innocence is immaterial. (See *People* v. *Demes* (1963) 220 Cal.App.2d 423, 434 [33 Cal.Rptr. 896] [cert. den., 377 U.S. 946 (12 L.Ed.2d 308, 84 S.Ct. 1354)].) There is no authority for the proposition that a formal vote is a prerequisite to a determination, after inquiry of the jury, that a verdict cannot be reached. (*People* v. *Demes, supra.*)

It was properly determined, therefore, that a reasonable probability existed that a verdict could not be reached as to Rojas and, accordingly, the jury was validly discharged for legal necessity. Consequently, the motions to enter a plea of once in jeopardy and to dismiss the charges were properly denied.

### Navarrette's Testimony

At the beginning of the second trial, the court was informed that Robert Navarrette, the chief prosecution witness who had testified at the preliminary hearing and at the first trial, had indicated he was going to refuse to testify. When Navarrette was called as a witness he, [accordingly], refused to testify. An *in camera* hearing was then held at which Navarrette stated that he had received threats by letter and telephone, that bottles had been thrown at his car, that "things" on his father's car had been broken, that he was called names at school such as "snitch," that he was struck physically on one occasion and that he feared for his life and that of his family.

Notwithstanding that it was explained to him that he had been granted immunity and would be in contempt of court if he did not testify, Navarrette persisted in his refusal. He was found in contempt of court and sent to juvenile hall for the duration of the trial.

Navarrette's prior preliminary hearing and first trial testimony were read to the jury over defendants' objection. In ruling such testimony admissible the court indicated that it did so on two grounds: That it constituted a prior inconsistent statement under Evidence Code section 1235,[4] in that Navarrette's refusal to testify was an implied denial of his

---

[1]Unless otherwise indicated all statutory references hereinafter made are to the Evidence Code.

former testimony, and that it was former testimony under section 1291, subdivision (a)(2), in that Navarrette's refusal to testify made him unavailable as a witness.

At the conclusion of the trial the jury was instructed, at the request of the People, that the testimony given by a witness at a prior proceeding is to be considered in the same light and in accordance with the same rules which relate to testimony given by witnesses in court.

Defendants argue that it was error to admit Navarrette's prior testimony because it was hearsay and not within any statutory exception. They argue that the witness was not "unavailable" to testify as required by section 240, subdivision (a), nor was the failure to testify the equivalent of a statement inconsistent with a prior statement so as to make section 1235 applicable. They assert that the error was prejudicial as Navarrette's testimony was crucial to the prosecution's case.

■ We think it is clear that the testimony was not admissible under section 1235. The statute provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony *at the hearing* and is offered in compliance with Section 770." (Italics added.) " 'The hearing' means the hearing at which a question under this code arises, and not some earlier or later hearing." (§ 145.) Accordingly, whether Navarrette's refusal to testify at all is in effect a "statement" inconsistent with earlier statements is irrelevant in view of the fact that Navarrette did not testify at the hearing at which the question of admissibility of the testimony arose.

■ The crucial question, then, is whether Navarrette's testimony at the former trial is admissible pursuant to the provisions of section 1291 on the basis that he was unavailable as a witness. Subdivision (a) of section 1291, in relevant part, provides: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness. . . ."

■ We observe, preliminarily, that the use of depositions and former testimony does not infringe upon the constitutional right of confrontation as long as there has been due cross-examination. (*People* v. *Foster* (1967) 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976]; *People* v. *Wallin* (1950) 34 Cal.2d 777, 781 [215 P.2d 1]; *People* v. *Valdez* (1947) 82 Cal.App.2d 744, 749-750 [187 P.2d 74] [cert. den., 338 U.S. 835 (94 L.Ed. 510, 70 S.Ct. 42)]; 5 Wigmore on Evidence (3d ed.) §§ 1396, 1397, 1398,

pp. 127-136.) As Wigmore points out, where there has been due cross-examination there has been a confrontation. (5 Wigmore, *supra*, § 1396, p. 127.) Our inquiry is not whether defendants were deprived of the right of confrontation but whether Navarrette's former testimony is admissible as an exception to the hearsay rule.

With respect to the use of depositions and former testimony where a witness is unavailable, Wigmore makes this pertinent observation: "The general principle upon which depositions and former testimony should be resorted to is the simple principle of *necessity,* —i.e. the absence of any other means of utilizing the witness' knowledge. If his testimony given anew in court cannot be had, it will be lost entirely for the purposes of doing justice if it is not received in the form in which it survives and can be had. The only inquiry, then, need be: Is his testimony in court unavailable?" (5 Wigmore, *supra*, § 1402, p. 148.) We take cognizance, too, of Wigmore's observation that such testimony may be "testimony unavailable by any means whatever" and "testimony unavailable without serious inconvenience." (5 Wigmore, *supra*, § 1402, at p. 148; see also §§ 1402-1409, pp. 148-164.)

In California the Legislature has delineated the specific cases of unavailability in section 240, which provides as follows: "(a) Except as otherwise provided in subdivision (b), 'unavailable as a witness' means that the declarant is: (1) Exempted or precluded on the ground of privilege from testifying concerning the matter to which his statement is relevant; (2) Disqualified from testifying to the matter; (3) Dead or unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity; (4) Absent from the hearing and the court is unable to compel his attendance by its process; or (5) Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process. (b) A declarant is not unavailable as a witness if the exemption, preclusion, disqualification, death, inability, or absence of the declarant was brought about by the procurement or wrongdoing of the proponent of his statement ·for the purpose of preventing the declarant from attending or testifying."

We note that, although a witness who is exempted or precluded from testifying on the ground of privilege[5] is specifically stated to be

[5]The "unavailability of a witness" who refuses to testify on the ground of privilege and the use of his former testimony where he claims such privilege has been considered in several out-of-state cases wherein it was held that such voluntarily given former testimony is admissible in a subsequent trial where the accused had full opportunity to

"unavailable as a witness" pursuant to the provisions of subdivision (a)(1) of section 240, there is no mention made in the statute for a witness who is present in court but refuses to testify on other grounds excepting where he is unavailable to testify "because of then existing physical or mental illness or infirmity." (§ 240, subd. (a)(3).) The People contend that this provision is applicable in the present case. They assert that the term "mental infirmity" includes a mental state induced by fear which impels the witness to refuse to testify.

The situation before us appears to be one of first impression. Our research reveals no case in point nor has any been cited to us. Here the witness was present in court, he was physically and mentally able to testify, and he did not invoke any claim of privilege. He simply refused to testify because he was in fear of his safety and that of his family. There is no challenge made to the sufficiency of the evidence supporting the trial court's determination that the fear was justified. The record amply demonstrates that Navarrette harbored a fear that if he testified his safety and that of his family would be endangered.

In *People* v. *Gomez* (1972) 26 Cal.App.3d 225 [103 Cal.Rptr. 80], the reviewing court held that the trial court did not abuse its discretion in admitting into evidence the testimony of a witness at a preliminary hearing where at the time of trial she was confined to a state hospital and two psychiatrists testified there was a strong possibility that her appearance in court would be detrimental to her mental health. The trial court had determined that the witness' mental condition rendered her unavailable as a witness within the meaning of section 240, subdivision (a)(3). (At pp. 229-230.)[6]

Referring particularly to the meaning of the term "existing physical or mental illness or infirmity" contained in subdivision (a)(3) of section 240, the appellate court, in *Gomez*, observed as follows: "[T]he illness or infirmity must be of comparative severity; it must exist to such a degree as to render the witness's attendance, or his testifying, relatively impossible and not merely inconvenient. However, we cannot say just

cross-examine the witness. (See *State* v. *Stewart* (1911) 85 Kan. 404, 416 [116 P. 489, 492-494]; *State* v. *Reidie* (1935) 142 Kan. 290, 291 [46 P.2d 601, 602]; *State* v. *Woods* (1930) 130 Kan. 492, 493 [287 P. 248, 249]; *Johnson* v. *People* (1963) 152 Colo. 586, 591 [384 P.2d 454, 457]; *Exleton* v. *State* (1925) 30 Okla.Crim. 224, 225 [235 P. 627, 628]; *McCoy* v. *State* (1936) 221 Ala. 466, 468 [129 So. 21, 22-23]; *Woodward* v. *State* (1926) 21 Ala.App. 417, 418 [109 So. 119, 120].)

[6]The witness in *Gomez* was the complaining witness in a prosecution for unlawful sexual intercourse with a female under the age of 18 in violation of Penal Code section 261.5.

what illness or infirmity must be shown or the degree of its severity, leaving that determination to a trial court's exercise of discretion." (26 Cal.App.3d at p. 230.)

We observe that among the definitions in Webster of the word "infirmity" is the following: "a defect of personality or weakness of the will." (Webster's Third New Internat. Dict.) This definition, when considered in the light of the wide discretion given to determine the existence of the necessity in a particular case, permits the trial court to consider whether a mental state induced by fear of personal or family harm is a "mental infirmity" that renders the person harboring the fear unavailable as a witness.[]

The maxim *expressio unius est exclusio alterius* is inapplicable. In *People* v. *Hacker Emporium, Inc.* (1971) 15 Cal.App.3d 474, 477 [93 Cal.Rptr. 132], we find the following pertinent statements: "Like other rules of construction, the maxim *expressio unius est exclusio alterius* gives way where it would operate contrary to the legislative intent to which it is subordinate or where its application would nullify the essence of the statute. [Citations.] Likewise the rule is inapplicable where no reason exists why persons or things other than those enumerated should not be included, and manifest injustice would follow by not including them. [Citation.] . . . The rule as expressed in the maxim also fails if such interpretation leads to absurd and undesirable consequences."

Section 240 clearly expresses a legislative intent to deem a person "unavailable as a witness" in specific cases of unavailability which were recognized under existing law. (See Legis. Committee com. to § 240.) No [] [sufficient] reason appears to us why the former testimony of a witness who is present in court but refuses to testify because he is in fear of his safety or that of his family should not be used when that of a witness, who claims privilege or who is absent from the hearing and his attendance cannot be compelled or procured, can be used.[7] Moreover, to

[7]The Federal Rules of Evidence now (Jan. 2, 1975, effective July 1, 1975) define "unavailability as a witness" to include a declarant who "persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so." (Fed. Rules of Evid., rule 804 (a) (2).) Prior thereto, in *United States* v. *Mobley* (5th Cir. 1970) 421 F.2d 345 it was held proper to receive in evidence at a second trial a transcript of the testimony of a codefendant at a first trial who, after pleading guilty at the second trial, refused to testify. Also, in *Mason* v. *United States* (10th Cir. 1969) 408 F.2d 903, it was held proper to receive in evidence at a second trial transcripts of the testimony of witnesses at a first trial who, at the second trial, were held in contempt for refusing to testify. The court noted that the "unavailability" which must exist to warrant the use of prior testimony did not have reference to the body of a potential witness but rather to his testimony. (*Id.*, at pp. 905-906; see also *State* v. *Thomas* (1973) 110 Ariz. 120, 125-127 [515 P.2d 865]; *State* v. *Terry* (1969) 202 Kan. 599, 603 [451 P.2d 211]; *People* v. *Pickett* (1954) 339 Mich. 294, 306 [63 N.W.2d 681, 45 A.L.R.2d 1341].)

preclude the testimony of a witness refusing to testify for the reasons given by Navarrette would lead to an undesirable consequence. As pointedly observed by the court below, if a witness who has given former testimony where he was subjected to cross-examination can be prevented from testifying in a subsequent hearing because of threats and fear the ends of justice would be thwarted and the judicial system endangered.

We note, further, that the only exception provided for in section 240 is that found in subdivision (b) dealing with the situation where the causes enumerated in subdivision (a) are brought about by the proponent of the previous statement where such proponent has by procurement or wrongdoing prevented the declarant from attending or testifying. This is not the situation in the case at bar. Here Navarrette was prevented from testifying by persons other than the proponent of Navarrette's former testimony.

In summary, we conclude that Navarrette's refusal to testify on the grounds of fear for the safety of his person and that of his family rendered [] [him "unavailable as a witness" within the meaning of section 240, subdivision (a)(3).] There was no way in which he could be compelled to testify. The finding that he was in contempt of court and the punishment therefor could not and did not compel Navarrette to testify. []

[The judgments are affirmed.]