60 Cal.App.4th 1282 (1998)
In re CHRISTOPHER T., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
LISA A., Defendant and Appellant.
Docket No. B110930.
Court of Appeals of California, Second District, Division Five.
January 20, 1998.
*1285 COUNSEL
Mitchell L. Beckloff for Defendant and Appellant.
De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Principal Deputy County Counsel, and Kristine Miles for Plaintiff and Respondent.
[Opinion certified for partial publication.[]]
OPINION
TURNER, P.J. 

I. INTRODUCTION
Lisa A., the mother of minor, Christopher T., appeals from an order of the juvenile court, pursuant to California Rules of Court,[1] rule 1425 transferring a dependency case from Los Angeles to Santa Barbara County where the minor and his foster parents have relocated. We affirm the change of venue order.

II. BACKGROUND
The sustained Welfare and Institutions Code[2] section 300 petition alleged the mother had a history of excessive alcohol consumption.[3] On August 30, 1990, she was under the influence to such a degree that she was unable to adequately protect and supervise the minor. Her condition contributed to an altercation with another family member. When Christopher, who was then seven years old, tried to intervene, his mother pulled a patch of hair from his head. The following day, what is now known as the Los Angeles County Department of Children and Family Services (department) detained Christopher and his then 23-month-old brother Thomas A. The department petitioned to have them declared dependent wards of the juvenile court pursuant *1286 to section 300.[4] On November 6, 1991, Christopher was ordered placed in long-term foster care with his maternal aunt and uncle. Christopher lived with his aunt and uncle from September 5, 1990, until August 24, 1992. The aunt and uncle requested the minor be removed from their home after several confrontations with the maternal grandparents during the mother's scheduled visits. In August 1992, Christopher was placed with his current foster parents, Joni M. and Chris C., who are his legal guardians.
Christopher has been in a permanent plan of guardianship since September 7, 1994. On February 6, 1997, the department sent the mother a notice of hearing for review of the permanent plan pursuant to section 366.3.[5] The notice also indicated that the social worker was recommending transfer of the case to Santa Barbara County. In a report dated February 26, 1997, which was prepared for a regularly scheduled review of the permanent plan, the department indicated that Christopher resided in Santa Barbara County and had since October 2, 1996. The foster parents bought a home in Santa Barbara County. The report indicated Christopher was doing well in school with a 3.0 average and was participating in sports. The department also requested that the trial court order the case be transferred to Santa Barbara County. The mother opposed the venue change request on the grounds among other things: All the court's prior orders since August 30, 1990, were invalid; Christopher should be placed with his maternal grandparents, who have priority and no adjudication against them that they are not loving grandparents; Christopher has been separated from his brother; and Christopher was being held against his will.
On February 26, 1997, the juvenile court continued the hearing to March 5, 1997, so as to allow the minor's attorney to consult with Christopher. The minor's attorney was directed to determine whether Christopher's current needs were being met. The mother was not present but the maternal grandfather appeared at the hearing. On March 5, 1997, the juvenile court ordered the case transferred to Santa Barbara County. The mother filed a timely *1287 notice of appeal from the transfer order. (1) Section 379 and rule 1425[6] confer the right to appeal such an order on either of the affected counties. Although there is no similar statute or rule specifically granting a parent the right to appeal, section 395[7] confers the right to appeal a transfer order on *1288 the parent. (In re Jon N. (1986) 179 Cal. App.3d 156, 158-160 [224 Cal. Rptr. 319].)

III. DISCUSSION
(2a) Our primary task in this appeal is to determine whether the trial court had authority to transfer the future dependency proceedings to Santa Barbara County based upon the change in the minor's residence as provided in section 375 and rule 1425. (3) In Phelps v. Stostad (1997) 16 Cal.4th 23, 31-32 [65 Cal. Rptr.2d 360, 939 P.2d 760], the California Supreme Court explained the relevant rules of statutory construction as follows: "`A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.] [¶] Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part. "We are required to give effect to statutes `according to the usual, ordinary import of the language employed in framing them.' [Citations.]" [Citations.] `"If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.].... `When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]"' [Citation.]"
(4) In interpreting a statute or court rule which is part of the dependency scheme, the California Supreme Court has explained: "Dependency proceedings are proceedings of an ongoing nature. While different hearings within the dependency process have different standards and purposes, they are part of an overall process and ongoing case. One section of the dependency law may not be considered in a vacuum. It must be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citation.]" (In re Marilyn H. (1993) 5 Cal.4th 295, 307 [19 Cal. Rptr.2d 544, 851 P.2d 826]; In re Michael D. (1996) 51 Cal. App.4th 1074, 1084 [59 Cal. Rptr.2d 575].) In all dependency proceedings, the primary concern is the best interests of the child which the Legislature has *1289 declared must be considered in "all deliberations." (§ 202, subd. (d); In re Sade C. (1996) 13 Cal.4th 952, 993, fn. 20 [55 Cal. Rptr.2d 771, 920 P.2d 716]; In re Eric H. (1997) 54 Cal. App.4th 955, 966 [63 Cal. Rptr.2d 230].)
(2b) Section 375, which is the principal statute relied upon by the mother, provides: "Whenever a petition is filed in the juvenile court of a county other than the residence of the person named in the petition, or whenever, subsequent to the filing of a petition in the juvenile court of the county where such minor resides, the residence of the person who would be legally entitled to the custody of such minor were it not for the existence of a court order issued pursuant to this chapter is changed to another county, the entire case may be transferred to the juvenile court of the county wherein such person then resides at any time after the court has made a finding of the facts upon which it has exercised its jurisdiction over such minor, and the juvenile court of the county wherein such person then resides shall take jurisdiction of the case upon the receipt and filing with it of such finding of the facts and an order transferring the case." Rule 1425(a) provides in part: "For purposes of rules 1425 and 1426, the residence of the child shall be the residence of the person who has the legal right to custody of the child according to prior court order, including (1) a juvenile court order under section 361.2 and (2) an order appointing a guardian of the person of the child." Rule 1425(d) provides: "If after the child has been placed under a program of supervision the residence is changed to another county, the court may upon an application for modification under rule 1432 transfer the case to the juvenile court of the other county."
The mother does not dispute that rule 1425(d) permits a dependency court judge to transfer venue to another county when the minor moves to the other jurisdiction. Rather, the mother contends section 375 should be interpreted narrowly to provide that, once a petition has been filed, the juvenile court only has the authority to transfer a case if her residence changes. This, she reasons, is because she is the person who would be legally entitled to the custody of the minor were it not for the existence of a court order. She argues for purposes of a transfer "the residence of the minor and his caretakers is irrelevant." This she contends is because there is no explicit grant in section 375 of the right to transfer a court proceeding to another county if the minor's residence changes. We disagree for several reasons.
We are unpersuaded by the premise the Legislature intended by enacting section 375 to restrict the juvenile court's authority to transfer the case once the petition had been filed to a change in the mother's residence, thereby, *1290 making the county where the minor or the legal guardian resides irrelevant. Implicit in the mother's argument is that this is a clear case for application of the maxim expressio unius est exclusio alterius that is, "[t]he expression of some things in a statute necessarily means the exclusion of other things not expressed." (Gikas v. Zolin (1993) 6 Cal.4th 841, 852 [25 Cal. Rptr.2d 500, 863 P.2d 745].) (5) The doctrine has also been defined by the Supreme Court as follows: "`Under the familiar rule of construction, expressio unius est exclusio alterius, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed.' (Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 195....)" (Mutual Life Ins. Co. v. City of Los Angeles (1990) 50 Cal.3d 402, 410 [267 Cal. Rptr. 589, 787 P.2d 996], original italics.) The Supreme Court also defined the phrase expressio unius est exclusio alterius in People v. Johnson (1988) 47 Cal.3d 576, 593 [253 Cal. Rptr. 710, 764 P.2d 1087] in the following fashion: "`[U]nder the doctrine of expressio unius est exclusio alterius we must infer that the listing of terms and conditions is complete, and that there are no additional requirements which bind petitioner.' ([Freytes v. Superior Court (1976) 60 Cal. App.3d 958,] 962 [132 Cal. Rptr. 26].)" (Original italics.) The doctrine of expressio unius est exclusio alterius has been defined by the California Supreme Court as a "mere guide" to be utilized when a statute is ambiguous. (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1391 [241 Cal. Rptr. 67, 743 P.2d 1323].) The Supreme Court has further limited this principle of statutory construction as follows: "`[T]he maxim expressio unius est exclusio alterius is inapplicable ... "where no reason exists why persons and things other than those enumerated should not be included, and manifest injustice would follow by not including them....'" (People v. Reed (1996) 13 Cal.4th 217, 227 [52 Cal. Rptr.2d 106, 914 P.2d 184] italics in original; People v. Rojas (1975) 15 Cal.3d 540, 551 [125 Cal. Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127].) Further, the Supreme Court has noted: "It is true that the canon of construction upon which respondent rests its case should be applied `where appropriate and necessary to the just enforcement of the provisions of a statute.' [Citation.] Nevertheless, expressio unius est exclusio alterius is no magical incantation, nor does it refer to an immutable rule. Like all such guidelines, it has many exceptions...." (Estate of Banerjee (1978) 21 Cal.3d 527, 539 [147 Cal. Rptr. 157, 580 P.2d 657], original italics.) In Estate of Banerjee, the Supreme Court listed some of the exceptions as follows: "The rule is inapplicable: where no manifest reason exists why other persons or things than those enumerated should not be included and thus exclusion would result in injustice (Blevins v. Mullally [(1913)] 22 Cal. App. [519], 529 [135 P. 307]); to a statute the language of which may fairly comprehend many different objects, some of which are mentioned merely by way of example, without excluding others of similar nature (People v. Richards (1927) 86 Cal. App. *1291 86, 89-90 [260 P. 582]); to a matter which is only incidentally dealt with in a statute (Galland v. Galland (1869) 38 Cal. 265, 267-268); where its application would run counter to a well established principal of law (Western U. Tel. Co. v. Superior Court (1911) 15 Cal. App. 679 [115 P. 1091]; see also 45 Cal.Jur.2d, Statutes, § 133, pp. 639-640)." (Estate of Banerjee, supra, 21 Cal.3d at p. 539, fn. 10; accord, In re Joseph B. (1983) 34 Cal.3d 952, 956 [196 Cal. Rptr. 348, 671 P.2d 852].) In the case of In re Michael G. (1988) 44 Cal.3d 283, 291 [243 Cal. Rptr. 224, 747 P.2d 1152], the Supreme Court noted: "`This rule, of course, is inapplicable where its operation would contradict a discernible and contrary legislative intent. [Citation.]' (Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 195 ...; see also Cianci v. Superior Court (1985) 40 Cal.3d 903, 918 ... [citing Chickering].)"
(2c) In the present case, the doctrine of expressio unius est exclusio alterius has no controlling application. To begin with, section 375 does not require transfer to a county where the natural parent resides. The statute states that the "entire case may be transferred...." (§ 375.) The word "may" as it appears in the Welfare and Institutions Code has a permissive rather than a mandatory meaning. (§ 15[8]; Newland v. Kizer (1989) 209 Cal. App.3d 647, 655 [257 Cal. Rptr. 450]; California Assn. of Health Facilities v. Kizer (1986) 178 Cal. App.3d 1109, 1113-1114 [224 Cal. Rptr. 247]; People v. Superior Court (Steven S.) (1981) 119 Cal. App.3d 162, 175 [173 Cal. Rptr. 788, 22 A.L.R.4th 1140]; Mooney v. Pickett (1971) 4 Cal.3d 669, 676, fn. 7 [94 Cal. Rptr. 279, 483 P.2d 1231].) Moreover, the Legislature has granted the Judicial Council the authority pursuant to section 265[9] to adopt court rules for use in dependency proceedings. (San Diego County Dept. of Social Services v. Superior Court (1996) 13 Cal.4th 882, 884, fn. 1 [55 Cal. Rptr.2d 396, 919 P.2d 1329]; Robert S. v. Superior Court (1992) 9 Cal. App.4th 1417, 1426 [12 Cal. Rptr.2d 489].) Rule 1425(d), adopted pursuant to section 265, specifically permits a change of venue when the minor is moved to a different county. When the entire dependency scheme is construed together as it must be (In Marilyn H., supra, 5 Cal.4th at p. 307; In re Michael D., supra, 51 Cal. App.4th at p. 1084), it is clear section 375 allows a transfer to the county of the natural parent's residence. However, rule 1425(d), adopted pursuant to section 265, also permits transfer to the minor's residence. Section 375 and rule 1425(d) address two separate grounds for a venue change, with the minor's best interests always being the primary concern. (In re Sade C., supra, 13 Cal.4th at p. 993, fn. 20; In re Joseph B. (1996) 42 Cal. App.4th 890, 900 [49 Cal. Rptr.2d 900].) Moreover, *1292 there is no reason to read into section 375 the limitations suggested by the mother and no injustice will result when dependency proceedings are heard in the county of the child. As a result, the doctrine of expressio unius est exclusio alterius is inapplicable to the present case.
For these reasons, we also disagree with the mother's argument that rule 1425, which provides that the case may be transferred based upon the residence of the child, conflicts with section 375 and must be declared constitutionally invalid under California Constitution, article VI, section 6 which provides, "To improve the administration of justice the council shall survey judicial business and make recommendations to the courts, make recommendations annually to the Governor and Legislature, adopt rules for court administration, practice and procedure, not inconsistent with statute, and perform other functions prescribed by statute." Also, the Judicial Council has authority under section 265 to "`establish rules governing practice and procedure in the juvenile court not inconsistent with law.'" (San Diego County Dept. of Social Services v. Superior Court, supra, 13 Cal.4th at p. 884, fn. 1; In re Juan C. (1993) 20 Cal. App.4th 748, 752 [24 Cal. Rptr.2d 573].) The mother argues rule 1425 is inconsistent with section 375 because rule 1425, in the mother's words, "considers only the residence of the minor in authorizing a juvenile court to transfer a case to another county." However, rule 1425 is an alternative basis from the ground specified in section 375 for transferring a dependency case to another county. The two provisions of law are not inconsistent. Moreover, before ordering the transfer, the trial court must determine the identity and residence of the child's custodian which may be verified in person or by declaration of a probation officer in the transferring or receiving county. (Rule 1425(b) & (e).) The trial court is then required to "consider whether the transfer of the case would be in the child's best interest." (Rule 1425(e).) The trial court may not transfer the case unless it determines such transfer is in minor's best interest. (Rule 1425(e).) These court rules are entirely consistent with the law in that they comply with the legislative mandate that the juvenile court consider the best interests of the minor in all dependency proceedings. (§ 202, subd. (d); In re Sade C., supra, 13 Cal.4th at p. 993, fn. 20; In re Joseph B., supra, 42 Cal. App.4th at p. 899.) Rule 1425 is not inconsistent with section 375.
.... .... .... .... .... .... .... .[*]

*1293 DISPOSITION
The venue transfer order is affirmed.
Grignon, J., and Armstrong, J., concurred.
Appellant's petition for review by the Supreme Court was denied April 15, 1998.
NOTES
[] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of indicated portions of part III.
[1] All references to rules are to the California Rules of Court.
[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[3] The mother's request for judicial notice of this division's written opinion (In re Christopher T. (Feb. 19, 1997) B103793 [nonpub. opn.]) concerning the denial of her section 388 petition is granted. (Evid. Code, §§ 452, 459.)
[4] Thomas A. was subsequently placed with his father. On June 13, 1991, at a judicial review hearing, the trial court terminated its jurisdiction over Thomas. The court ordered Thomas to be placed in his father's custody.
[5] Section 366.3, subdivision (a) states: "(a) If a juvenile court orders a permanent plan of adoption or legal guardianship pursuant to Section 360, 366.25, or 366.26, the court shall retain jurisdiction over the minor until the minor is adopted or the legal guardianship is established. The status of the minor shall be reviewed every six months to ensure that the adoption or guardianship is completed as expeditiously as possible. When the adoption of the minor has been granted, the court shall terminate its jurisdiction over the minor. The court may continue jurisdiction over the minor as a dependent minor of the juvenile court following the establishment of a legal guardianship or may terminate its dependency jurisdiction and retain jurisdiction over the minor as a ward of the guardianship established pursuant to Section 360, 366.25, or 366.26 and as authorized by Section 366.4."
[6] Section 379 states: "In any action under the provisions of this article in which the residence of a minor person is determined, both the county in which the court is situated and any other county which, as a result of the determination of residence, might be determined to be the county of residence of the minor person, shall be considered to be parties in the action and shall have the right to appeal any order by which residence of the minor person is determined." Rule 1425 provides: "(a) [Determination of residence  special rule on intercounty transfers (§§ 375, 750)] For purposes of rules 1425 and 1426, the residence of the child shall be the residence of the person who has the legal right to custody of the child according to prior court order, including (1) a juvenile court order under § 361.2 and (2) an order appointing a guardian of the person of the child. [¶] If there is no order determining custody, custody shall be with both parents. [¶] The juvenile court may make a finding of paternity under rule 1412. If there is no finding of paternity, custody shall be with the mother. [¶] Residence of a ward may be with the person with whom the child resides with approval of the court. [¶] (b) [Verification of residence] The residence of the person entitled to custody may be verified by the person in court or by declaration by a probation officer in the transferring or receiving county. [¶] (c) [Transfer to county of child's residence (§§ 375, 750)] After making its jurisdictional finding, the court may order the case transferred to the juvenile court of the county of the residence of the child if: [¶] (1) The petition was filed in a county other than that of the residence of the child, or [¶] (2) The residence of the child was changed to another county after the petition was filed. [¶] If the court decides to transfer the case, the court shall order the transfer before beginning the 602 disposition hearing without adjudging the child to be a ward. The court may transfer before or after the 300 disposition hearing. [¶] (d) [Transfer on subsequent change in child's residence (§§ 375, 750)] If after the child has been placed under a program of supervision the residence is changed to another county, the court may upon an application for modification under rule 1432 transfer the case to the juvenile court of the other county. [¶] (e) [Conduct of hearing] After the court determines the identity and residence of the child's custodian, the court shall consider whether transfer of the case would be in the child's best interest. The court shall not transfer the case unless it determines that the transfer will protect or further the child's best interests. [¶] (f) [Order of transfer (§§ 377, 752)] The order of transfer shall be entered on Judicial Council form Juvenile Court Transfer Orders (JV-550), which shall include all required information and findings. [¶] (g) [Transport of child and transmittal of documents (§§ 377, 752)] If the child is ordered transported to the receiving county in custody, the child shall be delivered to the receiving county within seven court days, and the clerk of the court of the transferring county shall prepare all papers contained in the files so that they may be transported with the child to the court of the receiving county. If the child is not ordered transported in custody, the clerk of the court of the transferring county shall transmit to the clerk of the court of the receiving county within 15 days all papers contained in the files. Certified copies shall be deemed originals. [¶] (h) [Appeal of transfer order (§§ 379, 754)] The order of transfer may be appealed by the transferring or receiving county and notice of appeal shall be filed in the transferring county, under rule 39. Notwithstanding the filing of a notice of appeal, the receiving county shall assume jurisdiction of the case on receipt and filing of the order of transfer."
[7] Section 395 states in relevant part: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; but no such order or judgment shall be stayed by the appeal, unless, pending the appeal, suitable provision is made for the maintenance, care, and custody of the person alleged or found to come within the provisions of Section 300, and unless the provision is approved by an order of the juvenile court. The appeal shall have precedence over all other cases in the court to which the appeal is taken."
[8] Section 15 states: "`Shall' is mandatory and `may' is permissive."
[9] Section 265 states, "The Judicial Council shall establish rules governing practice and procedure in the juvenile court not inconsistent with law."
[*] See footnote, ante, page 1282.