[No. F025993. Fifth Dist. Apr. 30, 1997.]

In re ERIC H. a Person Coming Under the Juvenile Court Law.
MERCED COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
MICHELLE H., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts 2 and 3.

COUNSEL

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dennis L. Myers, County Counsel, and Lisa J. Serafini, Deputy County Counsel, for Plaintiff and Respondent.

John D. Kirihara as Amicus Curiae.

OPINION

THAXTER, J.—The question presented here is whether a parent has a right under Welfare and Institutions Code section 350, subdivision (c)[1] (hereafter section 350(c)) to present evidence in support of a dependency petition when the county human services agency and counsel for the minor agree the

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

petition should be dismissed for lack of evidence. We conclude the parent does not have such right under the facts of this case.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 5, 1995, the Merced County Human Services Agency (Agency) filed a petition pursuant to section 300, subdivision (d) alleging that Casey H. sexually abused his six-year-old son, Eric. The Agency investigated the allegations and concluded Eric's reports were suspect. Eric's parents, Casey and Michelle, were divorced and had battled over custody in the preceding months. Eric had been living with Michelle with regular visits to Casey. During the custody proceedings, Michelle and Eric accused Casey of physically abusing Eric. The court appointed Dr. Robert Suiter, a clinical psychologist, to evaluate the parties.

After a two-day trial and review of Dr. Suiter's report, the family law court concluded Eric was not a "credible reporter" regarding the alleged physical abuse. It found Michelle was extremely manipulative, desired to interfere with the father-child relationship, and had indicated to Eric that his father was a child abuser. She also was overprotective of Eric to the detriment of his best interests. In addition, Michelle was "extremely evasive" in her answers during the trial and only wanted to answer the questions in the manner she thought they should be answered. She refused on numerous occasions to give a direct answer, even to her own attorney. On the other hand, the court found Casey was extremely credible, a good reporter, not evasive, and gave straight answers. On August 7, 1995, the court found the allegations of physical abuse not true and awarded sole legal and physical custody of Eric to Casey, with regular visitation for Michelle.

On July 31, 1995, Eric first told his therapist Casey sexually abused him. Eric next reported sexual abuse on August 16, 1995, to a paralegal and licensed clinical social worker that Michelle happened to be visiting. Eric's disclosures were reported to the Agency. An Agency social worker interviewed Eric on August 24, 1995, but was unable to substantiate any abuse. Eric next reported sexual abuse by his father to a friend of his mother's on November 4, 1995. The same Agency social worker was in the process of investigating that report when Michelle brought Eric to the Merced Sheriff's Office on December 2, 1995. Eric told a sheriff's office detective and two Agency social workers that his father made him masturbate and orally copulate him. At that time, Eric was removed from his father's custody and placed in foster care. The court permitted supervised visitation by both parents.

The court appointed an expert witness pursuant to Evidence Code section 730 to render an opinion as to Eric's competency to testify. The expert, Debra A. Johnson, Ph.D., was unable to interview and evaluate Eric before the time set for the jurisdictional hearing. Therefore, the social study was prepared without that input.

M. Patrick Drayton was the Agency social worker assigned to Eric's case. On December 7, Mr. Drayton supervised a visit between Eric and Casey. The visit was uneventful. The next morning, Michelle called Mr. Drayton, "enraged" that Eric had had contact with Casey. She accused Mr. Drayton of forcing Eric to visit Casey. Mr. Drayton then received a call from Eric's foster mother who said Michelle told her that Mr. Drayton had hit Eric while Eric was being driven for the visit. Mr. Drayton reported the accusation to his supervisor and requested an investigation. An Agency social worker interviewed Eric and the foster mother. The foster mother indicated Eric made the complaint after a lengthy conversation with Michelle. Eric reported that Mr. Drayton had pushed his thumb into his back in the visiting room, causing pain which he still felt. The worker examined Eric's back but found no marks or bruising. The social worker determined the report was unfounded.

Thereafter Mr. Drayton interviewed the parties for the social study. He reported that Casey denied the allegations and believed they were planted by Michelle in an effort to regain custody. Michelle refused to make a statement until she had spoken with her attorney. Eric said he wanted to go home with his mother.

Mr. Drayton questioned Eric's credibility regarding the reported molestations. He noted that most experts in the field of child sexual abuse tend to believe the testimony of children who report sexual abuse if their statements meet certain criteria. In custody cases, however, the criteria are not as useful because the child might have been coached and instructed to give appropriate answers to meet the criteria. Workers in the sexual abuse field recognized the problem and were developing techniques to deal with those situations. In this case, the court had appointed an expert to examine Eric in this regard. Mr. Drayton concluded, unless that examination indicated to the contrary, he believed Michelle's prior history of manipulation, combined with her extreme efforts to control Eric and the fact she falsely accused Mr. Drayton of physically abusing Eric, combined to make Eric's statements suspect. In view of Mr. Drayton's doubts, he recommended the court find the allegations not true and dismiss the petition.

Dr. Johnson interviewed Eric on January 9, 16, 23 and 29, 1996. She found Eric to be a bright, verbal child. During the first interview, Eric

volunteered that he wanted to live with his mother because his father was "stupid" and a "robber who had taken all of mom's money." He only talked about the inappropriate touching when asked specifically. He related that Casey had touched him in ways he did not like and pointed to his crotch area. On further questioning, he said Casey had touched him with his index finger but he could not remember whether he had clothes on, what time of day it had occurred or where the event had taken place. On the fourth interview, he did not remember how Casey had touched him, when he had touched him, or where the molest had occurred. "I just know he's bad, but I can't remember why." When directly asked, he said Casey had hit him on the head with his fist.

Dr. Johnson concluded that because Eric's molest report to her did not match his report in the sheriff's office on December 2, 1995, his recall of details faded quickly over the additional 20 days, his view of his father had clearly been contaminated by outside sources and his history of unfounded reports, the credibility of his molest report was "highly questionable."

The jurisdictional hearing was continued several times to April 15, 1996. On February 5, 1996, however, the court granted the request of Casey (Eric's counsel in the dependency proceeding, Ms. Oliver, concurred) that Eric be placed with Casey who was living in his parents' house.

The criminal aspect of the sexual molestation report was turned over to the Attorney General's office apparently because a deputy district attorney would be a witness in the case. On December 27, 1995, a deputy district attorney and sheriff's detective took Eric (without the Agency's knowledge or permission ) to the Sacramento MultiDisciplinary Interview Center to be interviewed by a "specialist." The interview was videotaped. Ms. Oliver saw the tape and asked Dr. Johnson to view it and to review other information (much of it supplied by Michelle) about the reported molests. Ms. Oliver also asked the doctor for specific recommendations about a treatment plan for Eric and his parents. Dr. Johnson viewed the additional information and filed a supplemental report on February 29, 1996.

The report states in part: "After reviewing all of the information, perhaps the most compelling piece of information was the taped interview on December 27. Eric gave details on that tape he otherwise did not offer in any of my interviews even when I pushed for details. *The tape, however, while compelling was not totally convincing given all the outside contamination.* He did, however, place a reasonable doubt in my mind that there is a possibility

that Eric was touched inappropriately by his father, Casey. Thus, in order to err on the side of safety, I'm making the following recommendations concerning Eric's placement." (Italics added.)

Dr. Johnson's recommendations included that Eric remain placed with Casey but that they not share a bedroom, they not go any place unless preapproved by their therapist, and Casey's parents or another approved person supervise any verbal and physical contact between Eric and Casey. Dr. Johnson recognized that this would make the living arrangements awkward but concluded the restrictions were crucial not only for Eric's safety but for Casey's sanity. The constant supervision would protect Casey from continued allegations and reports and "muddying of the waters." The doctor recommended that Michelle have only supervised contact with Eric. In addition, all the parties should receive therapy. She recommended that Eric's and Casey's therapist have the ability to preapprove unsupervised contact between Eric and Casey as their therapy progressed. She recommended that Michelle be given unsupervised contact only after she had worked through her feelings of victimization and rage in therapy and only after court review. Finally, Dr. Johnson recommended that the case be reviewed in court every three to six months, with the same judge and attorneys.

At the jurisdictional/dispositional hearing on April 15, 1996, the parties first argued whether the December 27, 1995, videotape was admissible. County counsel, representing the sheriff's office, submitted the tape was confidential under Government Code section 6254, subdivision (f) because it was prepared as part of an ongoing criminal investigation. Before the court ruled on the tape's admissibility, however, the Agency and Eric's counsel moved to dismiss the petition under section 350(c) based on the social study and Dr. Johnson's two reports. Casey joined the motion; Michelle opposed the motion.

Ms. Oliver, Eric's counsel, agreed to the dismissal based on Casey's agreement to participate in voluntary family maintenance pursuant to Dr. Johnson's recommendations. She noted Dr. Johnson had proposed the recommendations even before she viewed the videotape. Michelle asked for an opportunity to present evidence in support of the petition. The parties discussed whether Michelle's request was permitted under section 350(c). The court concluded that, unlike the minor, a parent had a right to present evidence only if the court denied the motion to dismiss the petition. The court then found the allegations in the petition had not been proved by a preponderance of the evidence and dismissed the dependency petition without prejudice. Michelle appeals from the dismissal.

## DISCUSSION

1. *Section 350(c) does not give a parent the right to present evidence in support of a dependency petition when the agency and counsel for the minor agree the petition should be dismissed for insufficient evidence.*

### Offer of Proof

■ The Agency submits the trial court had the discretion to receive additional evidence from Michelle before ruling on the merits of the petition and, in the exercise of that discretion, chose not to receive additional evidence. It further argues that any error was harmless because Michelle failed to make a sufficient offer of proof regarding the proffered evidence. We find no support in the record for the Agency's assertions.

The court did not ask for an offer of proof regarding the additional evidence Michelle wanted to present. Initially, it was prepared to let Michelle present evidence but, after argument by the Agency, it concluded Michelle had no right to present evidence unless it denied the motion to dismiss. It asked Michelle's counsel, in effect, to address why it should deny the motion to dismiss. In response, Michelle's counsel detailed the evidence already before the court. The court then dismissed the petition. By doing so, the court implicitly found that Michelle had no right to present additional evidence. When the trial judge indicates he or she will not receive evidence on a certain subject, an offer of proof relating to the excluded evidence is not a prerequisite to raising the issue on appeal. (3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, § 2044, pp. 2002-2003.) Accordingly, we will not find Michelle is barred from raising the issue on appeal by her failure to make an offer of proof.

### Interpretation of Section 350(c)

■ Michelle contends the trial court interpreted section 350(c) too narrowly by concluding that a parent had no right to present evidence if the court dismissed the petition after hearing from the Agency and the minor. Section 350(c) provides: "At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department and the minor has been closed, the court, on motion of the minor, parent, or guardian, or on its own motion, shall order whatever action the law requires of it if the court, upon weighing all of the evidence then before it, finds that the burden of proof has not been met. That action includes . . . the dismissal of the petition . . . . If the motion is not granted, the parent or guardian may offer evidence without first having reserved that right."

Similarly, California Rules of Court, rule 1412 provides:

"(a) The court shall control all proceedings with a view to the expeditious and effective ascertainment of the jurisdictional facts and of all information relevant to the present condition and welfare of the child.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) In any hearing under section 300 in which the county welfare agency has the burden of proof, after completion of the agency's case, and the presentation of evidence by the child, the court may, on motion of any party or on the court's own motion, order whatever action the law requires if the court, based on all the evidence then before it, finds that the burden of proof is not met.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"If the motion is denied, the child in a section 300 or section 601 or section 602 hearing, or the parent or guardian in a section 300 hearing, may offer evidence."

When the trial court considered the issue, there was no case law directly on point. Since then, one court has agreed, in dictum, with Michelle's position. In *In re Lauren P.* (1996) 44 Cal.App.4th 763 [52 Cal.Rptr.2d 170], the juvenile court dismissed a petition alleging that a father had sexually abused his daughter after the court found insufficient evidence of the alleged abuse. The issue before the appellate court (Fourth Dist., Div. Two) was whether the mother had standing to appeal the dismissal. The court concluded the mother was sufficiently aggrieved by the dismissal order to have standing to appeal from it. "Any parent who takes the position that dependency jurisdiction is warranted is aggrieved by dismissal of the petition." (*Id.* at p. 770.)

In reaching that decision, the court stated: "Once a petition has been filed . . . both parents are entitled to notice of and an opportunity to be heard at all subsequent proceedings. (Welf. & Inst. Code, §§ 302, subd. (b), 349.) At the jurisdictional hearing, the public agency has the burden of proof; if it fails to meet its burden of proof, the juvenile court is statutorily required to dismiss the petition. (Welf. & Inst. Code, § 350, subd. (c); see also Welf. & Inst. Code, §§ 355, 356.) However, it has been held that this statute cannot be applied literally so as to prevent *other parties* from presenting evidence in support of the petition. (*Guadalupe A.* v. *Superior Court* (1991) 234 Cal.App.3d 100, 105-107 . . . .) If the agency fails to meet its burden, the

trial court must give the *other parties* an opportunity to supply the evidentiary deficiency. (*Id.*, at p. 107.)" (*In re Lauren P., supra*, 44 Cal.App.4th at pp. 768-769, italics added.) The court concluded, "Just as a parent must be permitted to present evidence and to argue in opposition to dismissal below, so such a parent must be allowed to appeal from a dismissal on the merits." (*In re Lauren P., supra*, 44 Cal.App.4th at p. 770.)

*Lauren P.* relied on a case from this court, *Guadalupe A. v. Superior Court* (1991) 234 Cal.App.3d 100 [285 Cal.Rptr. 570]. Guadalupe had been adjudged a dependent child of the court because her parents' drug problems rendered them unable to care for her. At the close of the department of social services' case at the 12-month status review hearing, the court made a sua sponte motion under section 350(c). The court found the department had not met its burden of establishing, by a preponderance of the evidence, that returning the child to her mother would create a substantial risk of detriment to the child's physical or emotional well-being. (234 Cal.App.3d at p. 104.) The minor's counsel objected, arguing that the minor should have an opportunity to present her case to the court. Nevertheless, the court granted the motion and ordered Guadalupe to be returned to her mother. (*Ibid.*)

This court held that the trial court committed prejudicial error in refusing to permit the minor to present evidence before ruling on the section 350(c) motion. The court reasoned, the welfare of the child is the paramount concern of the court when ruling in dependency proceedings. Consequently, a trial court should not restrict or prevent testimony on formalistic grounds. Rather, the court should avail itself of all evidence which might bear on the child's best interest. (*Guadalupe A. v. Superior Court, supra*, 234 Cal.App.3d at p. 106.)

The trial court's refusal to permit Guadalupe's counsel to present evidence before ruling on the section 350(c) motion was consistent with the wording of the statute.[2] However, the literal application of section 350(c) in Guadalupe's case was inconsistent with the mandate to fully protect the interests of the minor. (*Guadalupe A. v. Superior Court, supra*, 234 Cal.App.3d at p. 107.) In refusing to permit Guadalupe to present her expert testimony on the psychological effect of immediate reunification with her mother, the trial court risked her well-being because the department did not present a complete case. Interpreting section 350(c) to preclude additional evidence from the minor defeated the policy and purpose of the dependency statutes. For

---

[2]At that time, section 350(c) provided, "At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department has been closed, the court . . . shall order whatever action the law requires . . . ."

this reason we concluded that section 350(c) should be interpreted as "permitting pertinent evidence offered by *another party* to be presented before the motion is ruled on." (*Ibid.*, italics added.)

Several years later, in 1994, the Legislature amended the first sentence of section 350(c) and inserted "and the minor" following "department." (See Historical and Statutory Notes, 73 West's Ann. Welf. & Inst. Code (1997 supp. vol.) § 350, p. 103.) The amended statute permits the court to entertain a section 350(c) motion to dismiss after presentation of the evidence on behalf of the department *and the minor*. The amendment reflects the holding of *Guadalupe A.*—the court cannot rule on the motion until it receives the minor's evidence. It does not reflect the broader dictum of *Guadalupe A.*, which required the court to receive evidence offered by "another party" before ruling on the motion.

■ The cardinal rule governing statutory interpretation is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. We do so by looking first to the words used in the statute, giving those words their usual and ordinary meaning in the context of the statutory scheme in which they appear. If there is no ambiguity in the language of the statute, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs. When statutory language is clear and unambiguous there is no need for construction, and courts should not indulge in it. (*People* v. *Thomas* (1996) 42 Cal.App.4th 798, 801 [49 Cal.Rptr.2d 856].) ■ The amended statute states the court "shall" rule on the motion to dismiss after the presentation of evidence on behalf of the Agency and the minor has been closed. "If the motion is not granted, the parent . . . may offer evidence . . . ." (§ 350(c).) The language of the statute is clear. The court is not precluded from hearing evidence from a parent "on behalf of the minor," but the parent has a right to present evidence only if the motion to dismiss is denied.

In addition, under the maxim *expressio unius est exclusio alterius*—the expression of some things in a statute necessarily means the exclusion of other things not expressed—(*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745]), we can infer that the Legislature's designation of the minor's right to present evidence in section 350(c) was intended to be exclusive. Under this principle, the parent has no right to present evidence in support of a dependency petition if the trial court grants the motion to dismiss upon receiving evidence from the Agency and the minor. Consequently, in light of the 1994 amendment, we question the dictum in *In re Lauren P.*, *supra*, 44 Cal.App.4th at page 770 that a parent must be permitted to present evidence in support of the dependency petition.

That conclusion is undermined by the language of the amended statute, which includes the minor and omits the parents.

*Policies Underlying Dependency Law*

Michelle submits that policies underlying dependency law militate against a plain meaning interpretation of section 350(c). First, in dependency proceedings, the welfare and best interests of the child are the paramount concern. (*Guadalupe A. v. Superior Court, supra,* 234 Cal.App.3d at p. 106.) Second, parenting is a fundamental right the impairment of which requires strict adherence to procedural due process, including the opportunity to be heard. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 412 [15 Cal.Rptr.2d 613].) Third, a parent's interest in the companionship, care, custody and management of his or her child is a compelling one, and dismissal of a dependency action may seriously affect the rights of a parent to such companionship or injure a parent's natural interest in obtaining protection for his or her child. (*In re Lauren P., supra,* 44 Cal.App.4th at pp. 770-771.)

*Best Interests of the Child*

While an argument can be made that the court should consider any and all evidence in support of a dependency petition to assure that the best interests of the child are fostered, the overburdened juvenile justice system would fail under such a rule. The amendment to section 350(c) appears to recognize that the minor's interests and well-being are sufficiently protected if the Agency and minor's counsel are heard before the court determines whether to dismiss the petition.

Section 317, subdivision (c) provides in any case in which it appears to the court that the minor would benefit from the appointment of counsel, the court shall appoint counsel for the minor. The primary responsibility of minor's counsel is to advocate for the protection, safety, and physical and emotional well-being of the minor. To that end, counsel must investigate further as necessary to ascertain the facts and must examine and cross-examine witnesses in both the adjudicatory and dispositional hearings. Additionally, the minor's counsel may introduce and examine his or her own witnesses, make recommendations to the court concerning the minor's welfare, and participate further in the proceedings to the degree necessary to adequately represent the minor. In any case in which the minor is four years of age or older, counsel must interview the minor to determine his or her wishes and to assess the minor's well-being. (§ 317, subd. (e).) The statute precludes minor's counsel from advocating for the return of the minor if, to the best of his or her knowledge, that return conflicts with the protection and

safety of the minor. In addition, counsel must investigate the interests of the minor beyond the scope of the juvenile proceeding and report to the court other interests of the minor that may need to be protected by the institution of other proceedings. (*Ibid.*)

In light of the encompassing statutory responsibilities of minor's counsel to advocate for the protection and well-being of the minor, it is unlikely that additional evidence from a parent is necessary to promote the welfare of the child. Michelle argues that precluding a parent from presenting evidence under certain circumstances, such as this case, could lead to absurd results due to collusion between the Agency, the minor, and one parent. She contends this case is similar to *Allen M.* v. *Superior Court* (1992) 6 Cal.App.4th 1069 [8 Cal.Rptr. 259].

In *Allen M.*, the department of social services filed a petition regarding two sisters which alleged that one of them had been sexually abused by their father. Later, the department moved to dismiss the petition, explaining that the daughter who had allegedly been molested was incompetent to testify, and there was insufficient evidence to support the petition. The minors opposed the motion, and the trial court refused to dismiss the petition. (6 Cal.App.4th at pp. 1071-1072.) The father sought a writ of mandate to compel dismissal. He and the department argued that the department had discretion to dismiss a petition unilaterally, and that the minors lacked standing to prosecute the dependency and hence to object to the dismissal. (*Id.* at p. 1072.) The Court of Appeal held that the department did not have sole discretion to dismiss the petition. Although the court may accord great deference to the department's expertise, the primary focus of the court is the determination of whether dismissal is in the interests of justice and the welfare of the minor. (*Id.* at p. 1074.) The court concluded, it was "uncomfortable subordinating judicial review to bureaucratic review. Our discomfort is heightened where, as here, the dismissal request is offered, albeit informally, in the context of a negotiated plea. Under these circumstances, the court properly concluded it must ensure the agreement between the Department and Allen did not compromise the children's welfare." (*Ibid.*)

The two situations are not comparable. In *Allen M.*, the minor's counsel opposed the dismissal; in this case minor's counsel joined in the motion to dismiss the petition based on insufficiency of the evidence. Moreover, the record demonstrates Ms. Oliver diligently represented Eric's interests throughout the proceeding, and Michelle does not contend (at least directly) otherwise.

Accordingly, the need to protect Eric's welfare did not require that the court permit Michelle to introduce evidence before it ruled on a section 350(c) motion to dismiss.

*Parent's Rights*

The policies recognizing a parent's fundamental right to parent his or her child and a parent's interest in obtaining protection for his or her child did not require the court to ignore the plain language of section 350(c) and allow Michelle to present evidence. When the court dismissed the dependency petition, it did not impact Michelle's fundamental right to parent Eric. Her rights remained as they were before the petition was filed.[3] Moreover, as we have concluded the need to protect the minor's welfare does not require that the court permit a parent to introduce evidence before it rules on a section 350(c) motion to dismiss, it follows that Michelle's interest in obtaining protection for Eric does not require such evidence either. Accordingly, Michelle has not shown that the policies underlying dependency law militate against a plain meaning interpretation of section 350(c) which permits the court to dismiss the dependency petition after hearing from the Agency and the minor.

*Purpose of Section 350(c)*

Michelle next contends the purpose of section 350(c) does not compel the trial court's narrow interpretation of the statute. She posits, since most dependency proceedings are initiated against the wishes of the parents, section 350(c) provides a mechanism by which the minor or parents can bring the proceedings to a prompt conclusion following presentation of the Agency's evidence. Further, the statute obviously was not intended to provide the Agency with a mechanism to bar evidence from parents in support of the petition or to intentionally withhold evidence to avoid having dependency established. She notes the 1994 amendment prohibited dismissal of a petition on the motion of the parents when the Agency presented a weak case without affording the minor an opportunity to present evidence in support of the petition. From this she concludes, given the primary objectives of the dependency court—the best interests of the child, coupled with the substantial interest of the parent which might be affected by dismissal of the petition—the statute should be interpreted to permit a parent as well as the minor to present evidence in support of the petition either absolutely or at the discretion of the trial court upon an offer of proof.

Section 350(c), the equivalent of a motion for nonsuit, allows a parent to test the sufficiency of the Agency's evidence before presenting his or her

---

[3]Among other things, Dr. Johnson recommended that Michelle be permitted only supervised contact with Eric which was more restrictive than the family court visitation order. However, the record does not indicate Michelle agreed to the conditions or that the court imposed any conditions on her in dismissing the petition. (Cf. *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1503-1504 [285 Cal.Rptr. 374].)

case. (Cf. *Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656].) However, it also promotes judicial efficiency. Section 350, subdivision (a)(1) provides, "The judge of the juvenile court shall control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought." Subdivision (c) of that same section permits the court to dismiss the dependency petition when, upon weighing the evidence on behalf of the agency and the minor then before it, it finds that the burden of proof has not been met. As set forth above, Eric's best interests and Michelle's parental rights required nothing more.

### Use of Juvenile Court to Litigate Family Court Matters

The Agency and Casey, who filed an amicus curiae brief, provide another reason for construing section 350(c) as the trial court did—to avoid providing disgruntled family court litigants with another forum to air their custody disputes at taxpayer expense. They claim this case is analogous to *In re John W.* (1996) 41 Cal.App.4th 961 [48 Cal.Rptr.2d 899]. *John W.* involved a "bitter child custody" dispute which became a juvenile dependency case on the strength of "unproved allegations of child molestation." The litigants stipulated that juvenile court jurisdiction should be based on "serious emotional damage" under section 300, subdivision (c) and the court accepted the stipulation. (*In re John W.*, *supra*, at p. 966.) After more than a year in the dependency system, during which there was no finding of abuse, the juvenile court terminated its jurisdiction over the minor and split physical custody between the two parents. (*Id.* at p. 964.) The appellate court concluded the matter was essentially a custody dispute that had been financed by the taxpayers. "The juvenile courts must not become a battleground by which family law war is waged by other means. It is common knowledge that the resources of local government social service agencies are stretched thin; in the juvenile dependency context those resources are manifestly intended to be directed at neglected and genuinely abused children." (*Id.* at p. 975.) "Juvenile courts must be vigilant to prevent unsubstantiated allegations of monstrous behavior [0085] from becoming a means of leverage in a custody fight, or a ticket to free legal services and psychotherapy." (41 Cal.App.4th at pp. 975-976; accord, *In re Anne P.* (1988) 199 Cal.App.3d 183, 201 [244 Cal.Rptr. 490] (conc. opn. of Brauer, J.).)

*John W.* is distinguishable from this case in several regards. However, *John W.* illustrates how disappointed family court litigants can abuse the juvenile dependency system. Interpreting section 350(c) so as not to provide

a parent with an absolute right to present evidence before the court rules on a motion to dismiss impedes such abuse.

2., 3.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

Judgment affirmed.

Ardaiz, P. J., and Wiseman, J., concurred.

A petition for a rehearing was denied May 19, 1997, and appellant's petition for review by the Supreme Court was denied July 23, 1997.

---

*See footnote, *ante*, page 955.