Filed 9/18/20  In re Q.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Q.M. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> B.P., <br><br> Defendant and Appellant. | F080877 <br><br> (Super. Ct. Nos. 517453, 517454) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Maria Elena Ratliff, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Meehan, J. and DeSantos, J.

At a Welfare and Institutions Code section 366.26 hearing[1] in December 2016, the Stanislaus County Juvenile Court ordered a permanency plan of legal guardianship for then 11-year-old Q.M and 7-year-old N.M., with their paternal aunt in San Jose and retained its jurisdiction over the guardianship. The court ordered once monthly visitation. In February 2020, the children's mother, appellant B.P. (mother), filed a modification petition under section 388 with the Stanislaus County Juvenile Court requesting enforcement of her visitation order, increased visitation and transfer of the case to Santa Clara County. The juvenile court summarily denied her petition, finding she failed to make a prima facie showing her circumstances had changed such that it was in the children's best interest to grant her petition in whole or in part. Mother challenges the court's summary denial on appeal. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

Dependency proceedings were initiated in San Luis Obispo County in September 2013 when then eight-year-old Q.M. and four-year-old N.M. were taken into protective custody by the San Luis Obispo County Department of Social Services (department) after the department received reports that the family had very little food and the home was filthy and without electricity or running water. In addition, mother was acting erratically, screaming profanities and hearing voices. The children's father suspected she was withdrawing from methamphetamine. He said he used methamphetamine once or twice a week and had done so for the past year. The children were placed in foster care in San Luis Obispo County.

The juvenile court exercised its dependency jurisdiction over the children, ordered them removed from parental custody and provided the parents family reunification services. The parents fully complied and maintained a strong and loving bond with the

---

[1]     Statutory references are to the Welfare and Institutions Code unless otherwise noted.

2.

children.  Consequently, in July 2014, the juvenile court returned the children to parental custody under a plan of family maintenance services.  In October 2014, father moved out of the family home after he tested positive for methamphetamine.  He continued to struggle with methamphetamine addiction and was in and out of substance abuse treatment programs.  Meanwhile, the children remained in mother's custody with family maintenance services.  Mother also struggled with methamphetamine use but was working closely with a drug and alcohol counselor.  She moved with the children to Stanislaus.

In December 2015, the Stanislaus County Juvenile Court accepted the case in transfer and set a review hearing for January 2016.  Placement specialists from the Stanislaus County Community Services Agency (agency) visited mother at her home. She admitted relapsing in June and September 2015 and driving with the children on New Year's Eve after having used methamphetamine and consumed alcohol.

The agency took then 10-year-old Q.M. and 6-year-old N.M. into protective custody and filed a supplemental petition (§ 387), alleging family maintenance services had proven ineffective in protecting them from their parents' drug abuse.  In February 2016, the children were placed with a relative in San Jose.

In May 2016, the juvenile court sustained the supplemental petition, denied the parents further services and set a section 366.26 hearing for December 2016.[2]

Meanwhile, mother filed a petition under section 388 (section 388 petition), seeking reinstatement of reunification services.  She attached certificates evidencing her

---

[2]    The juvenile court originally set the section 366.26 hearing for October 18, 2016. However, it also directly ordered the children into long-term foster care at the setting hearing, which mother challenged by writ petition and prevailed.  (*B.P. v. Superior Court* (Oct. 6, 2016, F074046) [nonpub. opn.].)  On remand, the court set the section 366.26 hearing for December 14, 2016.  On our own motion, we take judicial notice of the record on appeal filed in *B.P.*, as well as our opinion in that case.  (Evid. Code, §§ 452, subd. (d); 459.)

3.

completion of a 12-week intensive outpatient substance abuse treatment program in April 2016, a six-week parenting class in August 2016, and a substance abuse aftercare program in September 2016 as well as attendance sheets at Narcotics Anonymous/Alcoholics Anonymous meetings from January to September 2016. The juvenile court denied mother's section 388 petition after a contested evidentiary hearing in October 2016.

In December 2016, at the section 366.26 hearing, the juvenile court adopted a permanent plan of legal guardianship for the children with their relative caregiver. The court ordered once monthly four-hour visits for mother and dismissed its dependency, retaining jurisdiction over the children in guardianship. The visitation order specified that the visits would be as arranged by the caregiver. If no agreement could be reached, then the visits would be on the second Saturday from 9:00 a.m. to 1:00 p.m.

Between August 2019 and February 2020, mother filed three section 388 petitions requesting new orders. In the first section 388 petition filed in August 2019, she requested visits with the children on Saturdays and Sundays, including church visitation, as well as a court order allowing her to attend the children's medical appointments and school functions. She alleged she had moved to San Jose, was employed at a grocery store, attended church every Sunday and participated in mental health counseling. The juvenile court denied her petition without a hearing, concluding the proposed order did not promote the children's best interest.

Mother filed a second section 388 petition in January 2020, requesting transfer of the children's cases to Santa Clara County since both their relative guardian and mother lived in San Jose in Santa Clara County. The Stanislaus County Juvenile Court denied mother's petition on January 8, 2020, reasoning that the children's dependency cases were dismissed over three years before and no matter was pending before the court.

Mother filed her third section 388 petition on February 6, 2020, which is the subject of her appeal, requesting consistent and expanded visitation and the case

4.

transferred to Santa Clara County. Mother alleged it was difficult to communicate with the relative guardian concerning visitation and the guardian was not allowing her to have visitation on the court-ordered dates.

On February 21, 2020, the juvenile court denied mother's request without a hearing, stating, "There is already a specific visitation order. If guardians do not comply with the order, law enforcement should be contacted. This is the fourth 388 filed by mother in the last two months and it appears it is being filed as a guise for the case to be transferred."

## DISCUSSION

In her section 388 petition, mother requested an expanded visitation order that would be enforced and transfer of the case to Santa Clara County. On the lines designated to identify the new order or orders, she wrote: "We have a visitation order I want to expend and enforce in this matter[.] Have consistent visitation." As for changed circumstances, she alleged it was "difficult [to] communicate [with the] guardian about visitation [and the] guardian is not allowing visitation[] on ordered dates." She alleged the requested order was in the children's best interests because it would provide "emotional stability for [the] children and parents." She did not include her request for a transfer of the case among the new orders she wanted the judge to make but rather tacked it on to her explanation of why the new orders would serve the children's best interests. She wrote, "[R]equest court date. To have case ([transferred]) to Santa Clara County (change of venue)."

On appeal, mother contends the guardian's unwillingness to abide by the visitation schedule warranted an evidentiary hearing to ensure visitation occurred. Consistent visitation, she argues, as well as increased visitation would promote the children's stability and maintain their beneficial relationship with her. The court's error in not granting the transfer, she contends, was in its failure to consider the children's best

5.

interests. Respondent contends mother's petition was facially insufficient to warrant an evidentiary hearing. We concur.

## I.    *Section 388 Generally*

Section 388 allows interested parties to petition for a hearing to change or set aside a prior court order on the grounds of "change of circumstances or new evidence." (§ 388, subd. (a)(1).) A petition to modify a juvenile court order under section 388 must allege facts showing new evidence or changed circumstances exist and changing the order will serve the child's best interests. (§ 388, subd. (a); *In re Nolan W.* (2009) 45 Cal.4th 1217, 1235.) Courts must liberally construe a section 388 petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309−310.) However, section 388 requires a petitioner to make a prima facie showing of both elements to trigger an evidentiary hearing. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) If, for instance, the parent makes a prima facie showing of changed circumstances, the juvenile court can still deny the petition without an evidentiary hearing if the parent fails to make a prima facie showing the relief sought would promote the child's best interests. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188−190.)

" 'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' " (*In re Josiah S.* (2002) 102 Cal.App.4th 403, 418.) Consequently, section 388 petitions with general, conclusory allegations do not suffice. Otherwise, the decision to grant a hearing on a section 388 petition would be nothing more than a pointless formality. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

We review the juvenile court's summary denial of mother's section 388 petition for abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) The denial

must be upheld unless we can determine from the record that the juvenile court's decisions exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

II.   *Mother's Section 388 Petition is Insufficient*

A.  Visitation

Mother did not allege any facts that warranted enforcement or modification of the visitation order. The order had been in effect for three years when she filed her latest section 388 petition. The order granted her one four-hour visit once a month to occur as arranged by the guardian or on the second Saturday of the month at a specified time. Thus, it was sufficiently specific to allow enforcement of it if mother was so inclined. She claimed that the guardian was not complying with the visitation order but did not specify how she was noncompliant. She did not, for example, claim that the guardian was not allowing her the monthly visit. Aside from a general assertion that she had difficulty communicating with the guardian and that the guardian was not complying with the visitation order, she failed to show that juvenile court intervention was required to ensure that visitation occurred. On appeal, she contends the court's suggestion she involve law enforcement was inappropriate because it would cause conflict with the guardian and harm the children. Certainly, such steps should be taken only as a last resort. However, mother did not establish that *any* intervention was required to visit the children.

Nor did mother allege new facts or changed circumstances warranting increased visitation. Apparently, nothing had changed since she filed her section 388 petition in August 2019 informing the juvenile court that she moved to San Jose, was employed, attending church and participating in mental health counseling. The court found there was no evidence then that increasing visitation served the children's best interests.

7.

Mother did not allege any new facts in her latest petition that would warrant an evidentiary hearing.

B. Transfer

Section 375 governs the transfer of a juvenile dependency case to the county where the person legally entitled to custody of the child lives.[3] Although, the "Motion for Transfer Out" (form JV-548) is the prescribed form for requesting an intercounty transfer (Cal. Rules of Court, rule 5.610(e)(1) (rule)),[4] nothing precludes a party from requesting a transfer using the "Request to Change Court Order" (form JV-180) as mother did here.

Upon a motion for transfer, the juvenile court may transfer a dependency case to the county of the child's residence. The child's residence is the residence of the person who has the legal right to custody of the child. (Rule 5.610(a)(1)(B).) The juvenile court may, but is not required to, transfer the case to a county where the natural parent resides. (*In re Christopher T.* (1998) 60 Cal.App.4th 1282, 1291.) The paramount consideration is whether the proposed transfer will serve the child's best interest. (*In re Nia A.* (2016) 246 Cal.App.4th 1241, 1248 (*Nia A.*).)

Assuming the change of circumstance for transferring the case to Santa Clara County was mother's relocation to San Jose, she failed to show how transferring the case inured to the children's best interests. While it may have been logistically advantageous for mother, there is no evidence it would have been better for the children. Further, the case she cites, *Nia A.* is not on point. After accepting a dependency case from Contra

---

[3]     Section 375, subdivision (a) provides, as relevant here: "[W]henever, subsequent to the filing of a petition in the juvenile court of the county where that minor resides, the residence of the person who would be legally entitled to the custody of that minor were it not for the existence of a court order issued pursuant to this chapter is changed to another county, the entire case may be transferred to the juvenile court of the county where that person then resides …."

[4]     Rule references are to the California Rules of Court.

8.

Costa County, the Marin County Juvenile Court transferred it back because a county employee had a familial relationship with some of the parties involved even though the mother was living and working in Marin County and despite concerns the children were not provided adequate services in Contra Costa County. (*Id*. at pp. 1245−1248.) The *Nia A*. court reversed the order transferring the case to Contra Costa County, concluding the juvenile court erred in not considering the children's best interests. Here, the juvenile court did *not* transfer the case and mother failed to assert any evidence that an evidentiary hearing to make that determination was warranted.

## DISPOSITION

The order is affirmed.

9.