[No. C043690. Third Dist. Aug. 12, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DEONTRAY HINTON, Defendant and Appellant.

656

---

---

## Counsel

Shama H. Mesiwala, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Carlos A. Martinez and Virna L. Depaul, Deputy Attorneys General, for Plaintiff and Appellant.

---

## Opinion

**THE COURT**[*]— ██ The issue presented is whether the trial judge erred by giving the deadlocked jury a "dynamite" instruction. In his charge, the

---

[*] Before Scotland, P. J., Nicholson, J., and Hull, J.

judge emphasized the case must be decided by a jury at some point. He said a trial necessitated a substantial investment in time and resources. He told jurors holding a minority position to "respect the majority opinion" and to "question their own judgment if a majority of the jurors take a different view of the case." With this, the judge acted in clear and prejudicial violation of the California Supreme Court's holding in *People v. Gainer* (1977) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997] (*Gainer*). Consequently, we must reverse.

## BACKGROUND

A dispute, which attracted many onlookers, took place in front of defendant's house. According to prosecution witnesses, defendant had a gun and fired into the air. On the other hand, defendant presented witnesses who indicated someone else had a gun and fired the shot.

Defendant was tried by jury on charges of unlawful discharge of a firearm and being a convicted felon in possession of a firearm. The day after jury deliberations began, the jury sent the court a note, stating: "We seem unable to reach agreement." The jury was called back into court.

After making a few comments unrelated to the impasse, the trial judge stated: "This is a significant turn of events, obviously. And I respect everyone's opinion and everyone's conscientious effort to try to do this. This case involved a great deal of effort by both the parties, a great deal of time and preparation, no small amount of time of your own, and everybody else's, heat, light, in the building, and the rental, and dedication of resources to this matter. An inability to come to a conclusion one way or the other, 12-0, 0-12, means we would not complete the task that we all set out to do.

"There was a Rabbi who in the Third Century said, said to have said: If not us, and if not now, when. The short answer to that question, those questions are another 12 or 15 people. And when is going to be later. I don't know when, but the People will be free to bring the case again. I had a few other instructions. I'm not sure who wrote these. I don't know if they came from an appellate court or not, but they're about—actually, they're about choosing a [presiding juror]. And so it tells the jury to choose a [presiding juror] who can insure that these things happen. I am sure we have the right [presiding

juror] so I didn't give it. But do let me share the kinds of things that I think we all want to go on in deliberations, and then I would appreciate your all telling me if we got this done if that's what we all did, or if somehow we didn't. So let me share this." The judge read instructions concerning the appropriate conduct of the jury in deliberations.

The judge subsequently stated, "Let me just share this final counsel and then ask a few more questions. This repeats that. The jurors should listen with proper deference to each other and should question their own judgment if a majority of the jurors take a different view of the case.

"The jurors should not, however, surrender their own convictions of the truth and weight of the evidence. Each juror must decide the case for himself or herself and not merely acquiesce to the conclusion of others.

"The verdict should represent the individual opinion of each juror. In reaching a verdict a juror should not violate his or her individual judgment and conscience.

"So this kind of restates what I said the other day. I mean it says respect the majority opinion, but don't give up your own view, as I read that. And so that's only marginally helpful, to my view of thinking."

The judge then questioned the presiding juror and the other jurors. The presiding juror and some jurors advised the court they believed they had fairly deliberated and simply reached a respectful difference of opinion. However, other jurors subsequently suggested additional time might yet make a difference and the presiding juror stated, based on some of the comments, it appeared more time might be helpful. The judge responded: "Well, I appreciate that. I appreciate all of those who express a similar view. I, just because of the magnitude of the effort that's gone to this point, I'm just very reluctant to turn away and toss that out the window and say—and put us all back to square one. Because, as the Rabbi said: I think this is the right group. We—we have got a very fine group to decide this question. And I would be hard pressed to find a better twelve people.

"I am going to ask that you go back and give it another solid try and keep us posted as before. Whatever you need. We're here to help. . . . And I appreciate very much your conscientious effort on this part."

After the jury left, there was an off-the-record discussion and defense counsel then placed on the record an objection to the court's "dynamite" instruction, stating it was "a civil instruction."

The jury reached its verdict the next day. Defendant was convicted of unlawfully discharging a firearm in a grossly negligent manner and possession of a firearm by a convicted felon. Based on these convictions, the trial judge revoked defendant's probation from a previous case.

## DISCUSSION

Defendant claims the trial judge improperly and prejudicially advised the jury following its initial inability to reach a verdict. As already made clear, we agree.

The trial judge's remarks were error in light of *Gainer, supra,* 19 Cal.3d 835, which held certain components of a so-called *Allen* or dynamite instruction violated state law. (See *Allen v. United States* (1896) 164 U.S. 492 [41 L.Ed. 528, 17 S.Ct. 154] (*Allen*); see also *People v. Remiro* (1979) 89 Cal.App.3d 809 [153 Cal.Rptr. 89].) The *Gainer* court held: "[B]oth controversial features of the *Allen*-type charge discussed herein inject extraneous and improper considerations into the jury's debates. We therefore hold it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (*Gainer, supra,* at p. 852.)

The Supreme Court noted the latter improper component of an *Allen*-type instruction was not specifically approved in *Allen* itself, and these types of instructions had been developed through "[d]ecades of judicial improvisation." (*Gainer, supra,* 19 Cal.3d at p. 845.) The court also observed: "A third common feature of *Allen*-type instructions is a reference to the expense and inconvenience of a retrial. While such language was absent from the charge in this case, it is equally irrelevant to the issue of defendant's guilt or innocence, and hence similarly impermissible." (*Id.* at p. 852, fn. 16.)

The trial judge's remarks to the jury here, even when considered in context, typify all three improper components of this type of instruction.

First, the judge instructed jurors holding a minority position to question that position in light of the majority's view. The judge stated that the jurors should "respect the majority opinion" and should "listen with proper deference to each other and should question their own judgment if a majority of

the jurors take a different view of the case." That the judge also emphasized each juror must still reach his or her own decision did not repair the damage done by the instruction. Like the instruction in *Gainer*, it directed "the jurors to include an extraneous factor in their deliberations, i.e., the position of the majority of jurors at the moment." (*Gainer*, *supra*, 19 Cal.3d at p. 848.)

Second, the judge indicated the case would be retried if the jury could not agree. Though the judge said at one point the prosecutor would merely be "free" to try the case again, the judge implied the case *would* be retried if the jury could not agree. The judge stated the case would at some point be decided by "another 12 or 15 people" and later reiterated he "would be hard pressed to find a better twelve people."

And third, the judge emphasized the costs of the trial and implied that it would be necessary to expend further costs in a retrial. Near the beginning of his remarks, the judge directly referred to the time and resources devoted to the trial, as well as the other expenses incurred.

The judge's remarks, considered individually and collectively, injected extraneous and improper considerations into the jury's deliberations. (*Gainer*, *supra*, 19 Cal.3d at p. 852.)

The judgment must be reversed based on the error here, which cannot be characterized as harmless. Our own view of the weight of the evidence is not dispositive in these circumstances, because the jury actually reached an initial deadlock or impasse. "[W]hen the erroneous admonition to minority jurors is given or repeated to a criminal jury which have indicated that they are divided, it is difficult if not impossible to ascertain if in fact prejudice occurred; yet it is very likely that it did." (*Gainer*, *supra*, 19 Cal.3d at p. 855.) Accordingly, "a conviction following such a charge given in those circumstances is a 'miscarriage of justice' within the meaning of article VI, section 13, of the California Constitution, and the judgment must be reversed." (*Ibid.*)

■ Furthermore, the judge's other remarks aggravated this error. Statements indicating the case must at some time be decided present "a significant danger that the verdict will be influenced by a false belief that a mistrial will necessarily result in a retrial" and the concomitant expense to the government. (*Gainer*, *supra*, 19 Cal.3d at p. 855.) Any juror in a voting minority would have been particularly susceptible to the multiple pressures exerted by the judge, and it might well have been one or more of such jurors who ultimately suggested further deliberations could be helpful.

The judge's error here is particularly troubling considering the law is so well settled. Even worse, in overruling defendant's objection, the judge

indicated he instructed the jury based on a benchbook on *civil* proceedings and on a civil case, *Inouye v. Pacific Southwest Airlines* (1981) 126 Cal.App.3d 648 [179 Cal.Rptr. 13] (*Inouye*). The instruction used in *Inouye* was similar in certain respects to some of the comments made by the judge here. (See *id.* at pp. 650–651.) But the *Inouye* court recognized: "This type of instruction was disapproved for use in criminal trials by the Supreme Court in [*Gainer, supra,* 19 Cal.3d 835]." (*Inouye* at p. 651.) The *Inouye* court found the particular considerations in a civil case to be distinguishable and concluded the instruction was not unfairly coercive under the circumstances. (*Id.* at pp. 651–652.)

When he gave the jury instruction, the judge had the benefit of *Gainer, supra,* 19 Cal.3d 835, which is now the established law of this state and has been so for more than 25 years. He also had the benefit of decisions decided since that time that refer directly to *Gainer,* such as *Inouye, supra,* 126 Cal.App.3d 648. To avoid error, the judge merely needed to give due respect to precedent by familiarizing himself with the very authority he cited (*Inouye*), a brief opinion consisting of approximately two and one-half pages and slightly more than 1,000 words.

Moreover, if the judge had been familiar with recent authority in this district, he would have found a model for how to instruct the jury following its initial deadlock. A little less than a year before these jury deliberations, this court decided *People v. Moore* (2002) 96 Cal.App.4th 1105 [117 Cal.Rptr.2d 715]. In *Moore,* the jury was unable, initially, to reach a unanimous verdict on one of two counts, and the court further instructed the jury in an attempt to break the deadlock. (*Id.* at pp. 1118–1120.) On appeal, this court quoted the trial judge's instruction at length and concluded it did *not* contravene *Gainer* and was not unfairly coercive. (*Id.* at pp. 1118–1121.) This court concluded: "The trial court did not err in giving the challenged instruction. Indeed, the trial judge (Judge Michael G. Virga) should be commended for fashioning such an excellent instruction." (*Id.* at p. 1122.) The distinction between the judge's action here and Judge Virga's action in the earlier case requires no further comment. Suffice it to say, if the judge here had been aware of Judge Virga's instruction, available in a recently reported decision, the error would surely have been avoided.

Under the topic "Encouraging Verdict" in the California Judges Benchbook, available to every judge in California, the California Center for Judicial Education and Research (CJER) states: "In encouraging the jury to reach a verdict, the court may 'advise jur[ors] of their proper role in a manner which may assist them in their deliberations,' but may not admonish minority jurors to consider numerical division or preponderance of opinion, nor may it refer to the necessity or the expense and inconvenience of a retrial. *People v.*

*Gainer*[, *supra*, 19 Cal.3d 835.]" (Cal. Judges Benchbook: Criminal Trials (CJER 1991) Jury Trials, § 3.27, p. 83.) The Continuing Education of the Bar (CEB) practice guide, Criminal Law Procedure and Practice, uses almost identical language in describing the judge's duties under the heading "Determining Whether Jurors Are Unable to Reach Verdict; Declaring Mistrial." (1 Criminal Law Procedure and Practice (Cont.Ed.Bar 7th ed. 2004) § 33.26, pp. 921–922.)

Citing and quoting liberally from *Gainer*, the venerable Bernard Witkin and our esteemed colleague Justice Norman Epstein, in their treatise, California Criminal Law, devoted four pages to the topic of coercing minority jurors. (6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Judgment, §§ 38–39, pp. 59–63.) They noted: "The most questionable feature of the [*Allen*] instruction is the discriminatory admonition directed to minority jurors to rethink their position in light of the majority's views." (*Id.* at § 39, p. 61.)

The use note in the California Criminal Jury Instructions (CALJIC) guide states concisely under CALJIC No. 17.40 (Individual Opinion Required—Duty to Deliberate): "After holding the Allen-type 'dynamite' instruction improper, the Supreme Court recommended the continued use of this instruction. (*People v. Gainer*[, *supra*], 19 Cal.3d 835 . . . .)" (Use Note to CALJIC No. 17.40 (Jan. 2004 ed.) p. 1214.)

Abraham Lincoln wrote: "[You ask] 'the best mode of obtaining a thorough knowledge of the law' is received. The mode is simple, though laborious, and tedious. It is only to get the books, and read, and study them carefully . . . . Work, work, work, is the main thing." (Lincoln, *Letter to John M. Brockman, Sept. 25, 1860* in Collected Works of Abraham Lincoln (Basler edit., 1953) vol. 4, p. 121.) Since our 16th president's day, we have been given a plethora of aids to lighten the burden of determining what the law is on any given subject, yet this trial judge failed even to undertake the modest endeavor of consulting the most obvious sources. The life of a judge is not meant to be one of ease.

Because we conclude defendant's convictions must be reversed, we need not consider defendant's other contentions attacking the validity of the judgment. We note, however, that, because the revocation of probation was based on the tainted verdicts, we must also reverse the revocation.

## DISPOSITION

The judgment (02F04337) and order revoking defendant's probation (97F08671) are reversed. These matters are remanded to the trial court for further proceedings consistent with this opinion.