Filed 9/3/21  P. v. Luna CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C091590 |
| v. | (Super. Ct. No. CR036935) |
| DONALD BRUCE LUNA, | |
| Defendant and Appellant. | |

A jury convicted defendant Donald Bruce Luna for possession of a firearm by a convicted felon, and the trial court sentenced him to two years in prison.  Defendant now contends (1) insufficient evidence supports his conviction because there is no evidence he knowingly possessed the firearm, (2) his trial counsel was ineffective in failing to make a

1

Penal Code section 1118.1[1] motion for acquittal at the close of the People's case-in-chief, and (3) the trial court should not have asked the jury to continue deliberating after the jury indicated it was deadlocked.

Finding no merit in defendant's contentions, we will affirm the judgment.

BACKGROUND

An information charged defendant with felony possession of a firearm by a convicted felon (§ 29800, subd. (a)(1)) and alleged that he had multiple prior felony convictions. The following evidence was adduced at trial. On April 22, 2019, deputies responded to a call about a gold Ford Explorer leaving the scene of a location where shots had been fired. Former Sergeant Wes Gray, who was an investigator for the district attorney's office at the time of trial, saw such a vehicle stopped outside a business. Defendant sat in the right-rear passenger seat, a female sat next to him behind the driver's seat, and another female stood outside the vehicle. The driver had left the scene.

Sergeant Gray asked defendant and the female passenger to exit the vehicle, and they complied. Sergeant Gray then searched the vehicle, including the back passenger compartment. Sergeant Gray saw four inches of a rifle barrel sticking out from underneath the right-rear passenger seat where defendant had been sitting. Deputy Caleb Scanlan met Sergeant Gray at the stopped Ford Explorer. He also saw four inches of a rifle barrel protruding from underneath the right-rear passenger seat, and identified the gun as a Ruger 10-22 long rifle. The gun was unregistered. Deputy Scanlan saw two live rounds of .22-caliber ammunition and one expended round on the floorboard in front of the right-rear passenger seat.

As part of his defense, defendant called Deputy Hedilberto Acuna, who had investigated the shooting incident. Deputy Acuna opined that, based on a conversation

---

[1] Undesignated statutory references are to the Penal Code.

2

with a resident at the location where the shots had been fired, the resident had fired shots into the ground. Deputy Acuna did not investigate defendant.

Defendant also called Paula D., whom defendant had been dating at the time of the incident. She testified that on April 22, 2019, her friend Tia B. picked up Paula, defendant, and Tia's boyfriend in a Ford Explorer to go see petroglyphs. Paula said she brought a rifle for target shooting and put it under the back seat, but did not tell defendant the gun was in the vehicle. Paula and defendant sat in the back seat of the vehicle. She testified they were at the petroglyphs for a while, but they never shot the gun. On their way back, Tia's boyfriend, who was driving the vehicle, saw a stolen car that belonged to him. He stopped and argued with the resident, who pulled out a shotgun and fired it. Paula testified that Tia's boyfriend returned to the Ford Explorer and took off on a dirt road. When they saw a police car, Tia's boyfriend stopped and ran off. The officers questioned them, and Paula said the gun in the car belonged to her. Paula also testified that things in the car shifted around during the drive so the gun was visible to her and defendant by the time the police arrived.

After the jury had deliberated for less than a full day, it informed the trial court that it did not believe it could reach a unanimous verdict. The jury had taken three ballots and was divided 10 to 2. The trial court gave the jury the following additional instruction: "[S]ometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict on one or more counts. I want you to consider the following suggestions, do not hesitate to reexamine your views. Fair and effective jury deliberations require a frank and forthright exchange of views. Each of you must decide the case for yourself and form your individual opinion after you fully and completely consider all the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment. Do not change your position just because it differs from that of other jurors or just because you or other jurors want to reach a verdict. Both the People

3

and the defendant are entitled to the individual judgment of each juror.  It is up to you to decide how to conduct your deliberations.  You may want to consider new approaches in order to get a fresh perspective."  The trial court then asked the jurors to continue their deliberations.  Defendant did not object.

The jury found defendant guilty of possession of a firearm by a convicted felon. The trial court sentenced defendant to the middle term of two years in state prison.

DISCUSSION

I

Defendant contends there was insufficient evidence to support his conviction for possession of a firearm by a convicted felon.  He argues he was not the owner of the car, he did not have exclusive access to the car or gun, and there was no evidence that he had recently used, possessed, or had dominion and control over the gun.  He asserts that "while [his] proximity to the weapon and his relationship to the claimed owner may have inferred access to the firearm, . . . access to an item is not the same as having the right to control the item."

Where the sufficiency of evidence is challenged on appeal, we review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence.  (*People v. Snow* (2003) 30 Cal.4th 43, 66.)  Substantial evidence is evidence that is "reasonable, credible and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*Ibid.*)  We draw all reasonable inferences in favor of the judgment.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11-12.)  We will not set aside a judgment for insufficient evidence unless it clearly appears "that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the  jury."  (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)  This standard applies even for a conviction based largely on circumstantial evidence.  (*People v. Redrick* (1961) 55 Cal.2d 282, 289.)  Circumstantial evidence "is like a chain which link by link binds the defendant to a tenable finding of guilt," and a reviewing court

4

should only reverse if there is a conviction "notwithstanding a missing link." (*Id.* at p. 290.)

The elements for possession of a firearm under section 29800, subdivision (a)(1) include (1) conviction of a felony, and (2) ownership or knowing possession, custody, or control of a firearm. (See *People v. Arce* (2020) 47 Cal.App.5th 700, 714.) Possession may be "physical or constructive." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410.) A defendant has actual, or physical, possession "when the weapon is in his immediate possession or control. He has constructive possession when the weapon . . . is nonetheless under his dominion and control, either directly or through others." (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084.) More than one person may possess the same contraband. (*Ibid.*) Possession may be "imputed when the contraband is found in a place which is immediately accessible to the joint dominion and control of the accused and another." (*Miranda*, at p. 410.) While there must be "something more" than mere access to show dominion and control, "the necessary additional circumstances may, in some fact contexts, be rather slight." (*People v. Zyduck* (1969) 270 Cal.App.2d 334, 336.)

In this case, while another passenger owned the vehicle, the evidence shows that defendant shared dominion and control over the part of the car where the gun was found. The gun and ammunition were found in plain view on the floor below the seat where defendant was sitting, with the gun protruding about four inches from under defendant's seat. The barrel of the rifle was black and the floorboard was tan, so the barrel was very distinguishable and easily visible to the officers. There were two live rounds of .22-caliber ammunition and one expended round on the floor in front of defendant's seat. The jury could reasonably infer from this evidence that defendant constructively possessed the gun and knew of its presence. Although defense witness Paula D. claimed the firearm belonged to her, she brought it for target shooting but they did not use it as planned, and she did not tell defendant the gun was in the vehicle, her explanation did not

5

account for the expended round on the floor at defendant's feet. Based on all the evidence, a reasonable jury could infer defendant was aware of the presence of the gun and ammunition at his feet.

Defendant relies on *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417, disapproved on other grounds by *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6, but that case is distinguishable. In *Sifuentes* the defendant was not laying on the bed where the firearm was found (*Sifuentes,* at p. 1414), whereas in this case defendant was sitting in the seat where the firearm and ammunition were found.

Sufficient evidence supports the firearm possession conviction.

II

Defendant next contends his counsel was ineffective in not making a section 1118.1 motion for acquittal at the close of the People's case-in-chief. The argument is based on defendant's assertion, which we have already rejected, that there is insufficient evidence to support a conviction.

In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's "representation fell below an objective standard of reasonableness . . . [¶] . . . under prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-216.) Second, the defendant must show prejudice flowing from counsel's performance or lack thereof. (*Strickland*, at pp. 691-692; *Ledesma*, at pp. 217-218.) Where it is clear the alleged errors did not prejudice a defendant, a court may reject a claim of ineffective assistance of counsel without reaching the first prong. (*People v. Price* (1991) 1 Cal.4th 324, 440; *People v. Hayes* (1990) 52 Cal.3d 577, 607-608.) A trial court considering a section 1118.1 motion for acquittal applies the same standard as an appellate court reviewing a judgment of conviction: "whether there is substantial evidence of the existence of each element of the offense charged." (*People v. Wong* (1973) 35 Cal.App.3d 812, 828.)

6

As we have discussed *ante*, there was substantial evidence presented in the People's case-in-chief, which was sufficient to support the jury's rational inferences that defendant had constructive possession of the firearm. Under the circumstances, defense counsel was not deficient in declining to make a section 1118.1 motion for acquittal. (*People v. Jennings* (1991) 53 Cal.3d 334, 357.)

### III

In addition, defendant claims the trial court should not have asked the jury to continue deliberating after the jury indicated it was deadlocked.

Section 1140 provides in relevant part: "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court . . . unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." (§ 1140.) It is within the trial court's discretion to determine whether there is a reasonable probability of agreement. (*People v. Rojas* (1975) 15 Cal.3d 540, 546.) The trial court is not required to simply accept juror statements that they cannot agree on a verdict. (*People v. Valdez* (2012) 55 Cal.4th 82, 159.)

Here, the wording of the trial court's instruction was taken from CALCRIM No. 3551 and the so-called "firecracker" instruction this court approved in *People v. Moore* (2002) 96 Cal.App.4th 1105, 1119-1121. Defendant has not identified any specific language in the instruction that he claims was coercive and we do not find any. (Cf. *People v. Hinton* (2004) 121 Cal.App.4th 655, 659-660.) When the jurors suggested they were deadlocked, they had only deliberated for around two hours on the first day of deliberations and for a short time the following morning. The jurors mentioned it to the trial court only once. On this record, the trial court did not abuse its discretion in finding a reasonable probability the jurors could come to an agreement with more time to deliberate.

## DISPOSITION

The judgment is affirmed.

_____/S/_____
MAURO, Acting P. J.

We concur:

_____/S/_____
DUARTE, J.

_____/S/_____
KRAUSE, J.

8